# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CINDY L. ADKINS, | ) | |
| **Executrix of the Estate** | ) | |
| **of JOHN J. BALAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | C. A. No. 06-592-JJF |
| | ) | |
| **STANLEY W. TAYLOR, JR.,** | ) | |
| **ALAN MACHTINGER,** | ) | |
| **MICHAEL DELOY,** | ) | |
| **DAVID WILKINSON,** | ) | |
| **TRUMAN MEARS, and the** | ) | |
| **DEPARTMENT OF CORRECTION** | ) | |
| **of the STATE OF DELAWARE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

DEPARTMENT OF JUSTICE
STATE OF DELAWARE


*/s/ Ralph K. Durstein, III*
Ralph K. Durstein, III, ID #912
Stacey Xarhoulakos, ID #4667
Deputy Attorneys General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8400
Attorneys for Defendants

DATED:  February 29, 2008

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ....................................................................................... iii

ARGUMENT ...............................................................................................................1

I.    The Defendants Taylor, Machtinger, Wilkinson, and Deloy are Entitled to Summary Judgment, as the Plaintiff has Admitted Her Failure to Adduce Any Evidence in Support of Her Claims Against Them ..................................................3

II.    The Potential Claims Asserted Against the Department of Correction are Premature and Speculative, and in the Absence of Facts to Support Any Valid Pending Claim, the Department is Entitled to Summary Judgment .......................3

III.    All Claims Arising from Conduct Occurring Before September 25, 2004 are Time-barred Under the Limitation Period Governing Survival Actions Under Delaware Law .......................................................................................................5

IV.    Plaintiff's Claims for Damages Arising from the Suicide of the Decedent are Barred by Her Failure to Plead a Valid Wrongful Death Action Under the Delaware Statute, which Constituted an Election of Remedies and a Waiver of Such Damages........................................................................................................6

V.    Defendants Are Entitled To Summary Judgment On All Counts Because The Plaintiff Can Not Establish That Any Of The Defendants Retaliated Against Decedent In Violation Of His First Amendment Rights........................................10

    A.    Decedent's alleged protected conduct was pursuant to his official duties and not protected by the First Amendment................................................10

    B.    Plaintiff cannot establish a prima facie case of First Amendment retaliation because decedent did not suffer any adverse action ................12

        1.    The "Meets Expectations" evaluation was not an adverse action..12

        2.    The plaintiff has provided no evidence  to support the allegation that Lt. Mears "constantly monitored and  "nit picked" the decedent .......................................................................................13

        3.    There is no evidence that the decedent was continuously denied a meeting...........................................................................................13

        4.    The allegations related to the decedent's time cards are trivial, not adverse, and unsupported by the evidence.....................................13

5.  There is no evidence that the decedent ever asked Lt. Mears for a transfer ..........................................................................................14

C.  Defendant's alleged protected conduct was not a substantial or motivating factor in any alleged adverse action by the defendants.............................15

1.  Absence of Temporal Proximity....................................................15

2.  Absence of any evidence in the record to support causation .........15

D.  Defendants have not waived their *Mt. Healthy* defense and would have taken the same actions even in the absence of the protected activity ........17

VI.  The Plaintiff Has Not Produced Any Evidence To Establish That The Decedent Petitioned the Government ....................................................................18

VII.  Defendant Mears Is Entitled To Qualified Immunity In His Individual Capacity 18

CONCLUSION..................................................................................................20

## TABLE OF AUTHORITIES

**Case Name**                                                                    **Page**

*Almond v. ABB Industrial Systems, Inc.*, 56 Fed.Appx. 672 (6th Cir. 2003)..................................2

*Berry v. City of Muskogee, Oklahoma,* 900 F.2d 1489 (10th Cir. 1990)..........................................8

*Bradshaw v. Twp. of Middletown,* 296 F.Supp.2d 526 (D.N.J. 2003),
     *aff'd* 1556 Fed. Appx. 763 (3d Cir. 2005) .........................................................................11

*Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192 (10th Cir. 2007) ..................10

*Chesapeake & Ohio Railway Co. v. Martin*, 283 U.S. 289 (1931)....................................................2

*Fuerst v. Clarke*, 454 F.3d 770 (7th Cir. 2006) ..............................................................................11

*Glass v. Snellbaker*, 2007 WL 1723472 (D.N.J. June 14, 2007)....................................................11

*Hill v. City of Scranton*, 411 F.3d 118 (3d Cir. 2005) ..............................................................1, 9

*Hoffman v. Dougher,* 2008 WL 148877 (M.D.Pa. Jan. 14, 2008)..................................................11

*Hutto v. Finney*, 437 U.S. 678 (1978)..............................................................................................4

*Lauren W. v. Deflaminis*, 480 F.3d 259 (3d Cir. 2007) ...................................................................2

*McKee v. Hart,* 436 F.3d 165 (3d Cir. 2006)..................................................................................19

*Miller v. State Farm Mut. Ins. Co.,* 841 A.2d 308 (Del. 2004) ......................................................8

*Missouri v. Jenkins*, 491 U.S. 274 (1989)........................................................................................4

*Nagle v. Village of Calumet Park*, WL 3797726 (N.D.Ill. Dec. 18, 2006)...................................11

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)......................................1, 2, 3

*Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893 (5th Cir. 2002)..................................................3

*Sears, Roebuck Co. v. Midcap*, 893 A.2d 542 (Del. 2006).............................................................8

*Shefcik v. Village of Calumet Park*, 2007 WL 3334329 (N.D.Ill. Nov. 7, 2007) .........................11

*Sherrod v. Berry*, 629 F.Supp. 159 (N.D. Ill. 1985) .......................................................................7

*Shirden v. Cordero*, 509 F.Supp.2d 461 (D.N.J. 2007) ................................................................11

*Sterner v. Wesley College, Inc.*, 747 F.Supp. 263 (D. Del. 1990) ..................................................7

*Suppan v. Dadonna*, 203 F.3d 228 (3d Cir. 2000)..................................................................19

*Sweet v. Abbott Foods, Inc.*, 2005 WL 3528785 (Ohio App. 10 Dist. Dec. 27, 2005)....................2

*Taylor v. Brown*, 295 F.3d 783 (7th Cir. 2002) ............................................................................3

*West v. Maxwell*, 2001 WL 789654 (Del. Super. 2001) ................................................................8

## <u>OTHER AUTHORITIES</u>

First Amendment of the United States..........................................................................10, 11, 12

Eleventh Amendment of the United States ...........................................................................3, 4

42 U.S.C. §1983..................................................................................................................6, 9

42 U.S.C. §1988(a) ..................................................................................................................7

10 Del. C. §3724(d) ................................................................................................................8

10 Del. C. §8119 .....................................................................................................................5

29 Del. C. §5927 ...................................................................................................................12

F.R.C.P. 15.............................................................................................................................9

F.R.C.P. Rule 50 .....................................................................................................................1

F.R.E. 702 .............................................................................................................................17

F.R.E. 705 .............................................................................................................................17

9A Wright & Miller, *Federal Practice and Procedure* §2529 (2d Ed. 1995) .................................2

**ARGUMENT**

The plaintiff cites to the case of *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) for the proposition that the testimony of the defendants and other persons characterized as "interested witnesses" may not be considered by the Court in support of the defendants' motion. This is an absurd conclusion and the plaintiff has entirely misinterpreted *Reeves* and the applicability of the cited language.

The plaintiff cites to *Hill v. City of Scranton,* 411 F.3d 118 (3rd Cir. 2005). In *Hill*, where claims were asserted against the city, testimony of the Mayor and Comptroller was disregarded, for purposes of a Rule 50 motion. This holding lends no support to the plaintiff here, and can be distinguished, for a number of reasons. First, the plaintiff admittedly has no substantive claims against the employer here, the Department of Correction ("DOC"). Thus, there is no reason to suspect the motives of DOC employees, as there was in the case of the Mayor and Comptroller in *Hill.* Second, the plaintiff has abandoned her claims against the defendants Wilkinson and Deloy, removing any cloud of personal "interest' on their part in the outcome of the case. Third, DOC employees such as Jeff Foskey (brother of the plaintiff), not named as defendants, have no such interest. Fourth, former DOC employees such as Lee Mears lack any conceivable concern over the outcome of the suit. Fifth, no institutional bias can be assumed on the part of medical expert witnesses such as Dr. Kaye.

As the Court in *Hill* noted, courts do not weigh evidence or determine credibility questions at the summary judgment stage. *Id* at 131. In the context of summary judgment, the court must review the record as a whole, drawing all reasonable inferences in favor of the non-moving party, and disregarding evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. 133, 150 (2000). Among the factors to be considered is

"any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law". *Id.* at 149. The court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.*at 151.

Further, the summary judgment standard does not mandate the exclusion of all interested testimony. 9A Wright & Miller, *Federal Practice and Procedure* §2529, at 299 (2d Ed. 1995). The testimony of an employee of movant must be taken as true, where it disclosed no lack of candor, the witness was not impeached, his credibility was not questioned, and the accuracy of his testimony was not controverted by other evidence; where if it were inaccurate it could readily have been shown to be so. *Chesapeake & Ohio Railway Co. v. Martin,* 283 U.S. 289 (1931) (Jury not at liberty, under guise of passing on credibility, to disregard testimony of witness which from no reasonable point of view is in doubt).

The plaintiff's interpretation of *Reeves* has been rejected by this circuit and others as a misinterpretation that leads to an absurd conclusion. Such an interpretation would entirely "foreclose the possibility of summary judgment for employers, who almost invariable rely on their employees' testimony" to defend constitutional claims. *Almond v. ABB Industrial Systems, Inc.* 56 Fed.Appx. 672, 675 (6th Cir. 2003)("plaintiff's interpretation of the summary judgment standard both over-reads *Reeves* and leads to absurd consequences"); *Lauren W. v. Deflaminis*, 480 F.3d 259, 271-272 (3d Cir. 2007)("The fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness."); *Sweet v. Abbott Foods, Inc.*, 2005 WL 3528785, at *5 (Ohio App. 10 Dist. Dec. 27, 2005)(employers would be precluded from ever

obtaining summary judgment if plaintiff's interpretation of *Reeves* were applied)(citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002); *Taylor v. Brown*, 295 F.3d 783, 790-91 (7th Cir. 2002).

Clearly, the plaintiff's reliance on *Reeves* is over-reached and misplaced. The Court is free to consider the unrebutted, uncontradicted, unimpeached testimony of Wilkinson, Deloy, Lee Mears, Jeff Foskey and other defense witnesses in support of the defendants' motion for summary judgment.

**I.     The Defendants Taylor, Machtinger, Wilkinson, and Deloy are Entitled to Summary Judgment, as the Plaintiff has Admitted Her Failure to Adduce Any Evidence in Support of Her Claims Against Them**

The plaintiff has suddenly abandoned most of the claims originally asserted in her lawsuit, and now states that she "does not oppose the dismissal of the defendants Deloy, Wilkinson, Machtinger or Taylor".[1] The plaintiff has thus conceded that the record clearly demonstrates that these defendants are entitled to summary judgment. Dismissal is not appropriate as a procedural matter. The record should reflect that, for the reasons set forth in the Defendants' Opening Brief, and in the absence of any argument whatsoever by the plaintiff in support of her many allegations against these defendants, these defendants are entitled to summary judgment.

**II.    The Potential Claims Asserted Against the Department of Correction are Premature and Speculative, and in the Absence of Facts to Support Any Valid Pending Claim, the Department is Entitled to Summary Judgment.**

The plaintiff seeks to join the DOC in the case as a mere "placeholder", despite the fact that she freely admits any pending claims against the DOC are barred by the Eleventh Amendment. Reduced to its basics, her claim is that the DOC is a "necessary" defendant,

---

[1] PAB at 4.

because she *might* recover costs and fees in this case, and she then *might* need to pursue injunctive relief to collect such an award.  This theory is pure conjecture at this point in the case, when most of the claims originally asserted have already been abandoned, the remaining claim has yet to survive summary judgment, and no basis for injunctive relief exists.  The issue is not whether a successful plaintiff can maintain an action against the State after trial to recover fees and costs.  She can.  The issue is whether it is necessary, as a matter of law, to deny summary judgment and retain the State as a nominal defendant, in order to effectuate this prospective remedy.  It is not.

The holdings in *Missouri v. Jenkins,* 491 U.S. 274 (1989) and *Hutto v. Finney,* 437 U.S. 678 (1978), allowing for the recovery of fees and costs from a state **by a successful litigant, after trial**, actually support the defense argument, by assuring the plaintiff of a remedy, if and when she would obtain an award.  These cases hold that the Eleventh Amendment allows only prospective relief for expenses incurred in litigation, and not "retroactive liability for prelitigation conduct".  *Missouri v. Jenkins, supra,* at 278.  Neither case supports the denial of summary judgment to a defendant against whom no such claims for prelitigation conduct may be asserted.   In approving a post-trial fee award against the State of Missouri, including compensation for delay in payment, pursuant to the exercise of injunctive relief, the Court provided a complete mechanism for recovery by the successful plaintiff.  *Id.*  Given the ability of the plaintiff here to pursue such post-trial relief against the State of Delaware, there is no reason to retain the State as a nominal defendant in the case.  In *Hutto v. Finney, supra,* the Court dealt with this very issue, in holding that the failure of the plaintiffs to name the state as a defendant in that case did not preclude them from recovering costs and fees from the state through injunctive relief, after trial.  *Id.* at 699.

Any "retroactive" claim against the DOC or the State of Delaware in this case for past conduct is barred by the Eleventh Amendment, and any "prospective" claim has not ripened, to say the least. Retaining the DOC or the State as a named defendant for purposes of trial would prejudice the defense, and would invite speculation by the jury, while achieving nothing. The simple answer is, *if and when* the plaintiff realizes any recovery, and *if and when* she experiences any problem in collecting, she would be afforded the remedy of injunctive relief, regardless of whether the DOC or the State has been joined as a defendant. *Hutto v. Finney, supra.* At this point, the DOC enjoys full immunity from suit, and is entitled to summary judgment. Judgment cannot be precluded by claims that have not yet arisen, and may never arise.

**III.    All Claims Arising from Conduct Occurring Before September 25, 2004 are Time-barred Under the Limitation Period Governing Survival Actions Under Delaware Law.**

At no point does the plaintiff dispute the bar presented by 10 *Del.C.* §8119 to any claims occurring before September 25, 2004. She acknowledges that only conduct occurring after that date can be considered, in determining whether her sole remaining claim can survive summary judgment. In her Summary of Argument,[2] the plaintiff now contends that all "adverse action" occurred after September 25, 2004. This concession means that the plaintiff cannot rely on any alleged acts of "retaliation" – for purposes of resisting summary judgment or in the event of trial – from the time of the CERT resignations on August 6, 2004 until September 25, 2004. Thus, in the immediate aftermath of the resignations that are the centerpiece of the plaintiff's claims, the record will remain silent as to any acts of so-called "retaliation". And for fifty days thereafter, the plaintiff is prevented from relying on any conduct directed toward the decedent, and is barred from claiming any harm sustained or damages incurred during that period. For the reasons set

---

[2] PAB at 1.

forth in Defendants' Opening Brief,[3] temporal proximity is a critical aspect of any conduct alleged to have been in retaliation for a specific act. In this case, there can be no evidence in temporal proximity to the CERT resignations, due to the filing date of the Complaint. The plaintiff has waived the right to allege any conduct within the first seven weeks of the resignations, and is estopped from asserting any "retaliation" during that period. She is left with trying to link routine employment procedures, remote in time, with the act of resignation. Where she is legally barred from relying on any intervening facts, she must fail as a matter of law, in bridging the gap between the allegedly protected act and the subsequent conduct.

IV.    **Plaintiff's Claims for Damages Arising from the Suicide of the Decedent are Barred by Her Failure to Plead a Valid Wrongful Death Action Under the Delaware Statute, which Constituted an Election of Remedies and a Waiver of Such Damages.**

The defense does not dispute the theoretical availability of certain damage remedies, arising from the death of John Balas, in a §1983 action. The plaintiff was free to make such claims, but only in the context of a wrongful death action under Delaware law. The plaintiff failed to do so. She now claims that she has been deprived of a remedy for alleged violation of the decedent's Constitutional rights, and that the Delaware survival statute is deficient, and should be expanded. But the truth is, no one has deprived her of any available remedy for purported deprivations sustained by the decedent or his family. She, effectively, deprived herself of certain claims and damages, by electing to pursue a survival action only, and by foregoing the procedural and substantive relief afforded by the Wrongful Death Act. The plaintiff has, in the truest sense of the word, elected her remedies, and she must be bound by that decision. This is not a case of deficiencies in state law, but of deficiencies in pleading.

---

[3] DOB at 28-29.

The plaintiff misapprehends the interaction of state and federal law as to her claims. While the Civil Rights Act has been interpreted to provide broad damage remedies in the appropriate case, it has always been understood that the mechanism for asserting those claims would be state law[4]. If state law failed to so provide, the federal courts would fashion an adequate remedy. However, where the state, as here, provided a full and potentially generous remedy, the plaintiff was obliged to pursue it. The Delaware Wrongful Death Act is more than adequate, in combination with the Survival Act, to support claims arising under §1983 and to provide full compensation. Therefore, there is no call or need for this Court to expand the remedies available. It is for the plaintiff and her lawyers to pick and choose the claims asserted, the damages claimed, the remedies sought, and the appropriate procedural vehicles for achieving such relief. This they have done in this case, and the plaintiff is bound by her election.

The plaintiff's reliance on dicta in *Sterner v. Wesley College, Inc.,* 747 F.Supp. 263, 273 (D.Del. 1990) is misplaced. That case was brought under the Court's diversity jurisdiction, applying **Delaware** law, both the wrongful death and survival statutes having been properly pleaded. In the portion of the opinion quoted by the plaintiff,[5] Judge Roth is distinguishing a case, *Sherrod v. Berry,* 629 F.Supp. 159 (N.D. Ill. 1985), that interpreted the **Illinois** wrongful death and survival statutes. The holding in *Sherrod,* a federal civil rights action, was inapplicable in *Sterner. Sterner, supra,* at 274.

The Court in *Sherrod* had held that "restrictive" state wrongful death or survival actions would not preclude recovery of "hedonic" damages in a civil rights case. But the problem for the plaintiff here is not a "restrictive" wrongful death statute, but rather her failure to plead a cause

---

[4] Section 1988(a) of Title 42 specifically provides that such actions under §1983 shall be governed by state law, so far as that law is not inconsistent with the United States Constitution and federal statutes.

[5] PAB at 7.

7

of action under that statute. The scope of potential recovery under the Delaware Wrongful Death Act is broad, and would have afforded the plaintiff, as well as the children, siblings, and parents of the decedent claims for: [1] deprivation of pecuniary benefits from the deceased; [2] loss of contributions for support; [3] loss of services, including child care; [4] funeral expenses; and [5] (for those claiming an *in loco parentis* relationship with the deceased) mental anguish. 10 *Del.C.* §3724(d). Delaware courts have approved damage awards in wrongful death cases of $3,132,684, *Sears, Roebuck Co. v. Midcap*, 893 A.2d 542. 546 (Del. 2006) (gas stove explosion; reversed on other grounds); $4,300,000, *West v. Maxwell,* 2001 WL 789654 (Del. Super. 2001) (medical misdiagnosis); and the limits of applicable insurance policies, *Miller v. State Farm Mut. Inc. Co.,* 841 A.2d 308 (Del. 2004) (fatal automobile accident). The plaintiff, having failed to pursue the action available to her under this statute, is estopped from arguing that the scope of recovery in this survival action should be expanded to cover her error.

The case of *Berry v. City of Muskogee, Oklahoma,* 900 F.2d 1489 (10th Cir. 1990), relied on by the plaintiff, is also readily distinguished. The plaintiff in that inmate death case claimed damages under the Oklahoma wrongful death act, and the Court upheld the award of damages based on a jury instruction pursuant to that statute. *Id.* at 1501. This holding offers no comfort to the plaintiff here, who has failed to plead a wrongful death claim. Rather, the case serves as yet another road map for pleading claims arising from death in a civil rights case that was ignored by the plaintiff.

The filing of a survival action by this plaintiff as Executrix of her late husband's Estate is no substitute for the filing of wrongful death claims by the plaintiff in her own right, and on behalf of other eligible plaintiffs. This Court should respect the action of the Delaware General Assembly in providing two distinct and separate statutory causes of action. There is no call for

the Court to expand the scope of the Delaware Survival Act, when the additional relief sought was available to the plaintiff under the Wrongful Death Act.  The Delaware statutes are not deficient, in terms of affording a remedy under §1983.  Thus, cases from jurisdictions lacking a wrongful death statute, or affording an incomplete remedy, have no application to a case involving Delaware law.

The defendants would be seriously prejudiced, were the plaintiff to be permitted at this late date, to amend her Complaint to add a wrongful death claim or claims.  The limitation period for the filing of such claims has long since passed.  The plaintiff was placed on notice in the Answer of her inability to recover damages arising from the death of her husband, yet no amendment of the pleading was pursued to invoke the wrongful death statute.  The case has been evaluated, and discovery has proceeded, based on the claims raised – and the damages recoverable - by the plaintiff in her role as Executor.  She cannot now belatedly claim the procedurally distinct status of wrongful death plaintiff, particularly where she has failed to join any of the other potential claimants under the Wrongful Death Act as plaintiffs in their own right.  Any such actions are now time-barred, and cannot be initiated retroactively through amendment.  Fed. R. Civ. Pr. 15.  The Court has discretion to deny leave to amend, if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.  *Hill, supra,* at 134.  The plaintiff's election to forego a wrongful death claim is binding, and should be respected by the Court.

The plaintiff's decision to forego a wrongful death claim is understandable, given the lack of competent evidence attributing the suicide to problems at work and the overwhelming evidence, as discussed in **Argument V(C)** below, that the decedent's emotional and

psychological problems were a direct result of the breakdown of his extramarital affair, and the effect of these personal problems on his family.

The plaintiff must be denied the opportunity to pursue a cause of action that she did not plead that is unsupported by any competent evidence.

**V.    Defendants Are Entitled To Summary Judgment On All Counts Because The Plaintiff Can Not Establish That Any Of The Defendants Retaliated Against Decedent In Violation Of His First Amendment Rights.**

**A.    Decedent's alleged protected conduct was pursuant to his official duties and not protected by the First Amendment.**

There is no evidence in the record that the decedent ever "spoke out" as claimed by the plaintiff.  As argued in the defendants' Answering Brief, there is no evidence that the plaintiff and Lt. Mears "debated",[6] as asserted by the plaintiff, nor is there evidence that the decedent advocated on behalf of the union.

The plaintiff inappropriately relies on the decedent's job description, in arguing that his decision whether or not to continue as a CERT volunteer was pursuant to his official duties.  An employee's job description does not control the determination of whether an employee's speech was made to pursuant to official duties.  *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1203 (10th Cir. 2007).  The ultimate question is whether the employee spoke in their "professional capacity."  *Id.*  All of the alleged protected speech or conduct, including the resignation, by the decedent was in his professional capacity and related to his employment duties as a CERT officer.  The CERT members did not go out on "strike" or engage in any job action.  They merely resigned, with due notice, from further participation in a purely voluntary work-related activity.

---

[6] DAB at 18.

To state a claim under § 1983 for a violation of a plaintiff's First Amendment right to associate with a union, the plaintiff "must allege instances of union activity for which they were retaliated against by persons acting under color of state law." *Glass v. Snellbaker*, 2007 WL 1723472, at *5 (D.N.J. June 14, 2007)(citing *Bradshaw v. Twp. of Middletown*, 296 F.Supp.2d 526, 544 (D.N.J. 2003), *aff'd* 1556 Fed. Appx. 763 (3d Cir. 2005). In all of the cases cited by the plaintiff,[7] the public employee was more than just a rank and file member of the union, but instead took some action in his capacity as a member or leader advocating for the union. *Fuerst v. Clarke*, 454 F.3d 770, 774 (7th Cir. 2006)(plaintiff was a deputy sheriff and union president whose criticism of a political employment decision by the sheriff's was published in a local newspaper); *Hoffman v. Dougher*, 2008 WL 148877, *7 (M.D.Pa. Jan. 14, 2008)(plaintiff was actively participating in a union investigation in his capacity as a union member); *Shefcik v. Village of Calumet Park*, 2007 WL 3334329, *4 (N.D.Ill. Nov. 7, 2007)(union activity included filing grievances on behalf on union members, writing letters, and attending union meetings); *Nagle v. Village of Calumet Park*, 2006 WL 3797726, *5 (N.D.Ill. Dec. 18, 2006)(plaintiff made comments at a labor/management meeting during time period where he served as a union vice president and safety and grievance officer).

Unlike the public employees in the cases cited by the plaintiff, the decedent was not a union leader, did not speak to the media, did not attend union meetings, did not file grievances on behalf of union members, did not participate in a union investigation, and did not otherwise

---

[7] PAB at 16-17. The plaintiff's reliance on *Shirden v. Cordero*, 509 F.Supp.2d 461, 466-67 D.N.J. 2007) is erroneous as the Court in *Shirden* made no determination on the issue of whether the plaintiff spoke as a police officer or as a union president, but stated that a genuine issue of material fact precluded summary judgment.

act in his capacity as a union member. The decedent's union membership, without more, is not sufficient to sustain a First Amendment claim.[8]

**B.    Plaintiff cannot establish a prima facie case of First Amendment retaliation because decedent did not suffer any adverse action.**

**1.    The "Meets Expectations" evaluation was not an adverse action.**

Importantly, the plaintiff does not dispute the evidence that this annual evaluation had no effect on the decedent's employment. Given the uncontroverted evidence in the record of two previous ratings of "meets expectations" for the decedent, the plaintiff finally abandons her repeated assertions that this was the decedent's first-ever evaluation of "meets expectations". The plaintiff now attempts to allege that the evaluation was poor, not because of the rating, but because of the attachment to the evaluation by Lt. Mears. The plaintiff, however, has provided no evidence to show that this evaluation negatively affected any aspect of the decedent's employment. This argument is further without merit because the record clearly establishes that the decedent never even looked at the evaluation.[9] All the decedent knew about the evaluation is that it was not an "exceeds expectations".[10]

The plaintiff argues that 29 *Del. C.* § 5927 allows performance records to be considered in determining certain advancements for employees, and thus is definitive evidence that this evaluation could negatively affect the decedent.[11] The plaintiff entirely misses the point. The defendants have never asserted that performance evaluations could not be considered when determining things such as promotions. Rather, witnesses have testified that the evaluation received by the decedent from Lt. Mears – the evaluation that is the subject of this litigation –

---

[8] The decedent also did not engage in protected petitioning conduct. DOB at 36; DAB. at 30-32.
[9] A172-173, 178 (T. Mears at 151-154, 182).
[10] A172-173 (T. Mears at 151-154).
[11] PAB at 25.

would not preclude or delay advancement. On this point, the plaintiff has provided no evidence to support her claim that it was an adverse action. Indeed, she readily admitted that the decedent experienced no change whatsoever in his employment status, pay, or any other benefit following the evaluation, and makes no claim that the decedent was denied a promotion.

### 2. The plaintiff has provided no evidence to support the allegation that Lt. Mears "constantly monitored and "nit picked" the decedent.

It is questionable whether this odd allegation, even if supported by evidence, would be a sufficient adverse action to offend the Constitution. Lt. Mears was the decedent's supervisor and thus regularly monitored the plaintiff. The plaintiff provides no response to the lack of evidence to support this claim. To support her position, the plaintiff can only point to her inadmissible hearsay testimony. Lt. Mears is entitled to summary judgment on the meaningless claim that he "excessively monitored" decedent's conduct.

### 3. There is no evidence that the decedent was continuously denied a meeting.

The plaintiff now argues an additional adverse action, not asserted as such in her Complaint, and alleges that the decedent was continuously denied a meeting. The defendants thoroughly addressed this point in their Answering Brief.[12] The record clearly establishes that the decedent was never "denied" a meeting.

### 4. The allegations related to the decedent's time cards are trivial, not adverse, and unsupported by the evidence.

Lt. Mears has never disputed that he made notations on the decedent's time card, as well as the time cards of all his employees, for the reasons outlined in the Defendants' Opening Brief.[13] The plaintiff ignores the evidence that this activity was not exclusive to the decedent,

---

[12] DAB at 8-9, 21.
[13] DOB at 24.

and ignores Lt. Mears' proffered explanation for the notations on the time cards, and summarily concludes without support that this "alteration was intended to punish plaintiff for his conduct."[14] The evidence offered by the Lt. Mears is not refuted, there is no genuine issue of material fact, and Lt. Mears is entitled to judgment as a matter of law.

The plaintiff in reaching her own conclusions not supported by the evidence, also ignores the unchallenged testimony that there is no difference between an emergency and regular vacation day, and that they are not frowned upon. The defendants do not dispute that emergency vacation days are last-minute and not pre-planned. Indeed, that is precisely what Mike Deloy testified in his affidavit.[16] This does not, however, automatically lead to the unsupported conclusion made by the plaintiff that some negative inference can be drawn from an emergency.

Similarly, the allegation that the decedent was denied a copy of his time card in violation of some policy is not supported by any competent evidence. As Lt. Mears testified, the officers have no set time for totaling and distributing the timecards. When Lt. Mears completed them, he gave the decedent his card, right off of the copier.[17]

### 5. There is no evidence that the decedent ever asked Lt. Mears for a transfer.

The plaintiff requested a new supervisor from Defendant Deloy.[18] There is no evidence that this request was made to Lt. Mears. The Defendants have thoroughly addressed this allegation and established the lack of evidence to support the allegation in their Answering Brief.[19] The plaintiff does not even attempt to argue that the decedent ever requested a transfer

---

[14] PAB at 27.
[16]  Deloy Affidavit.
[17] T. Mears at 186.
[18] Deloy Affidavit.
[19] DAB at 21.

from Lt. Mears, and does not attempt to establish that Lt. Mears could have transferred the decedent, even if he wanted to do so. The plaintiff acknowledged that she has no evidence to establish a claim against Deloy, and there is no evidence to link Lt. Mears to any request for a transfer or a new supervisor. Thus, Lt. Mears is entitled to judgment as a matter of law.

### C.    Decedent's alleged protected conduct was not a substantial or motivating factor in any alleged adverse action by the defendants.

#### 1.    Absence of Temporal Proximity.

The plaintiff readily admits that all of the alleged adverse actions occurred after September 25, 2004.[20] The plaintiff is barred from relying on any conduct alleged to be retaliatory in the first seven weeks after the resignations. The plaintiff provides no further argument to rebut the numerous cases cited by the defendants establishing that the 50 day delay between the alleged protected conduct and the alleged adverse action indicates an absence of temporal proximity. The plaintiff's attempt to use temporal proximity to support their causation argument is thus defeated by the record and applicable precedent.

#### 2.    Absence of any evidence in the record to support causation.

By her own admission, the plaintiff has absolutely no evidence to support any claim against defendants Wilkinson, Deloy, Machtinger, and Taylor. Regardless, the plaintiff continues to attempt to causally link Lt. Mears with alleged adverse actions that he either had had no involvement in or are unsupported by the record.

The plaintiff provides little additional argument here, but largely cites to her Opening Brief to establish causation. The Defendants thoroughly addressed these arguments in their Opening and Answering Briefs,[21] but note that much of the plaintiff's argument on causation

---

[20] PAB at 1.
[21] DOB at 13; DAB at 14-16.

relies solely on inadmissible hearsay. The plaintiff does not refute that much of this evidence is inadmissible.[22] She also does not refute that much of her causation evidence, even if it were admissible, is based on the subjective beliefs of the decedent and thus insufficient to establish Constitutional liability.

The only additional argument presented by the plaintiff to support causation is citation to testimony of Officer Shockley, who testified that he was questioned about his CERT resignation in an interview. The plaintiff argues that this questioning was a reason to "deny positions." This is a misrepresentation of the record by the plaintiff, as Shockley clearly testified that a decision had not yet been made on the position.[23] Regardless, the plaintiff does not even attempt to argue that Lt. Mears was present for this interview, knew of the interview, or otherwise had any involvement in the interview. The plaintiff ignores the evidence in the record relating to Lt. Mears and his relationship with the CERT officers following the resignation. The officers did not feel that Lt. Mears harbored any animosity or bad feelings about the resignation.[24] They did not suffer any adverse consequences. Further, the plaintiff's abandonment of all claims against the defendants, other than Lt. Mears, acknowledges the lack of support for the allegations that management harbored any anger or animosity to decedent or other CERT officers who resigned.

The plaintiff also does not even attempt to refute the overwhelming causation evidence submitted by the defendants demonstrating that the cause of John Balas' suicide was his distress

---

[22] DOB at Standard, DAB at Arg. I.
[23] Shockley Dep. at 20.
[24] Mumford at 31-32; A101, A199-200, A244, A195-196 (Foskey at 32, Shockley at 19-20, Wilkinson at 114, Mumford at 31-32); A101, A199-200, A244, A195-196 (Foskey at 32, Shockley at 19-20, Wilkinson at 114, Mumford at 31-32); Adams at 23.

over events in his personal life. The plaintiff makes only a half-hearted effort[25] to tie the suicide to the CERT resignations over six months earlier. There are claims of "personality changes" in "the Fall of 2004", following the CERT resignations, yet the plaintiff is barred from relying on any such evidence in the first seven weeks after the resignations. The proffer of expert testimony cannot fill this gap, as the plaintiff psychologist never treated, interviewed, or observed John Balas, and relies on hearsay and the impressions of non-experts in forming her opinion. F.R.E. 702, 705. Such an opinion, lacking an adequate foundation, would be inadmissible at trial, and cannot be used to avoid summary judgment. Nor can the plaintiff rely solely on comments – inadmissible hearsay – supposedly made by the decedent to support her claims as to causation.

The decedent's threats of suicide, complaints of stress, and emergency consultations correspond not to the timing of the CERT resignations (August 2004) or his annual evaluation (September 2004), but to the well-documented[26] events in his personal life. Beginning with the breakdown of his extramarital affair in January and February 2005 and including threats of suicide, excessive drinking, complaints of stress, an emergency consultation at St. Jones, a rollover accident with his son in the vehicle the night before his death, and, finally, his wife's discovery of his extramarital affair minutes before the decedent's suicide.

### D. Defendants have not waived their *Mt. Healthy* defense and would have taken the same actions even in the absence of the protected activity.

As thoroughly argued in Defendant Mears' Answering Brief, the defendants did not waive their right to assert the *Mt. Healthy* defense. Lt. Mears would have engaged in the same

---

[25] PAB at 9-10.
[26] DOB at Statement of Facts. Significantly, the plaintiff has not disputed any of the facts alleged therein as to the affair or its effect on the decedent, and those facts must be accepted as true for purposes of Defendants' Motion.

conduct regardless of any alleged protected activity of the decedent.[27]

**VI.    The Plaintiff Has Not Produced Any Evidence To Establish That The Decedent Petitioned the Government.**

The plaintiff asserted in her Complaint that the protected petitioning conduct was that decedent petitioned the government for change through his union.[28]  There is no evidence that decedent ever actively participated in union activity, and the plaintiff now completely abandons this argument in favor of an argument equally lacking in evidentiary support.  The plaintiff now alleges that the petitioning conduct was the filing of a grievance and argues that the record "clearly proves" that this grievance was filed.[29]  Plaintiff's "clear proof" of evidence consists of citations to plaintiff's hearsay testimony and testimony of an officer who provided the decedent with a grievance form.  The plaintiff provides no competent evidence that the grievance was actually filed, and the DOC has no record of it.

The defendants rely on their thorough factual record and legal argument supported by competent evidence presented in their Answering Brief.[30]  The decedent did not engage in protected petitioning conduct.  Even if he had, Lt. Mears certainly had no knowledge of it and Lt. Mears is entitled to judgment as a matter of law.

**VII.    Defendant Mears Is Entitled To Qualified Immunity In His Individual Capacity.**

Lt. Mears does not dispute that a public employee's right to be free from retaliation for engaging in First Amendment conduct has long been clearly established.  The specific conduct alleged to be retaliatory in this case, however, was not clearly established as actionable during

---

[27] DAB at 27-29.
[28] Complaint at Count II.
[29] PAB at 18.
[30] DAB at 30-32.

the time period relevant to the allegations in the Complaint.  The defendants thoroughly argued this issue in their Opening Brief and will largely rest on those arguments.

The plaintiff attempts to distinguish the Third Circuit case of *McKee v. Hart*, 436 F.3d 165, (3d Cir. 2006), because in that case there were only three comments that were alleged to be retaliatory adverse actions.  The plaintiff entirely misses the point for which the *McKee* case was cited by defendants.  It was not for a comparison on the number of adverse actions, but for the Third Circuit's clarification in *McKee* that *Suppan v. Dadonna,* 203 F.3d 228 (3d Cir. 2000), did not clearly establish the law of retaliatory harassment, but only acknowledged that such a claim may exist.

The decedent did not receive a "poor performance" evaluation and has not established retaliatory conduct.  Even if she had, there was little guidance in 2004 as to the bounds of a retaliatory harassment cause of action", and insufficient specificity to put the defendant on notice of the potential cause of action.  *McKee*, 436 F.3d at 174

## CONCLUSION

This lawsuit has been reduced, through the plaintiff's wholesale concessions, to a single claim against a single defendant.  The plaintiff has further conceded that no conduct within the first fifty days after the alleged protected act can be relied on in support of her claim of "retaliation", thus depriving her of any temporally proximate evidence.  Her case is further reduced by the failure to pursue a claim under the Wrongful Death Act, a binding election of remedies which effectively precludes the recovery of damages arising from the suicide of John Balas.

The only remaining issue before the Court is whether the plaintiff can provide a causal link to a series of routine employment events: an annual evaluation, the recording of vacation time, the request for a meeting with superiors, all remote in time from the CERT resignation. The plaintiff herself lacks the ability to testify as to such a link, and cannot provide documents to support her claims.  The record does not support her claim that the decedent sustained any damages as a result of acts of so-called "retaliation".  Indeed, the record does not support the claim of protected activity, given the voluntary nature of the unit and the ability of any member to resign without consequences.  The plaintiff offers no evidence that the remaining claim could be pursued through competent evidence at trial.

<div style="margin-left:50%">

/s/ Ralph K. Durstein, III
Ralph K. Durstein, III (ID# 912)
Stacey Xarhoulakos (ID#4667)
Deputy Attorneys General
Department of Justice
State of Delaware
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302)577-8400

</div>

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **CINDY L. ADKINS,** | ) | |
| **Executrix of the Estate** | ) | |
| **of JOHN J. BALAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C. A. No. 06-592-JJF** |
| | ) | |
| **STANLEY W. TAYLOR, JR.,** | ) | |
| **ALAN MACHTINGER,** | ) | |
| **MICHAEL DELOY,** | ) | |
| **DAVID WILKINSON,** | ) | |
| **TRUMAN MEARS, and the** | ) | |
| **DEPARTMENT OF CORRECTION** | ) | |
| **of the STATE OF DELAWARE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on February 29, 2008, he caused the Reply Brief in

Support of Defendants' Motion for Summary Judgment to be sent via CM/ECF to the following:

> Thomas S. Neuberger, Esq.
> Stephen J. Neuberger, Esq.
> Cheryl Hertzog, Esq.
> Two East Seventh Street, Suite 302
> Wilmington, DE 19801

> **DEPARTMENT OF JUSTICE**
> **STATE OF DELAWARE**

> */s/ Ralph K. Durstein, III*
> Ralph K. Durstein, III, ID #912
> Stacey Xarhoulakos, ID #4667
> Deputy Attorneys General
> Carvel State Office Building
> 820 North French Street
> Wilmington, DE 19801
> (302) 577-8400
> Attorneys for Defendants