IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CINDY L. BALAS a/k/a CINDY L. ADKINS,    :
Executrix of the Estate of CORPORAL JOHN J.  :
BALAS,                   :
                      :
        Plaintiff,              :
                      :        C.A.No. 06-592-JJF
    v.                    :
                      :
STANLEY W. TAYLOR, JR., individually and  :
in his official capacity as the Commissioner of  :
Correction; ALAN MACHTINGER,        :
individually and in his official capacity as the  :
Director of Human Resources of the Department  :
of Correction; MICHAEL DELOY, individually  :
and in his official capacity as Deputy Warden of  :
Sussex Correctional Institution; CAPTAIN    :
DAVID WILKINSON, individually;      :
LIEUTENANT TRUMAN MEARS,        :
individually; and DEPARTMENT OF      :
CORRECTION OF THE STATE OF        :
DELAWARE,                 :
                      :
        Defendants.             :
                      :

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HER
MOTION FOR SUMMARY JUDGMENT

THE NEUBERGER FIRM, P.A.
THOMAS S. NEUBERGER, ESQ. (#243)
STEPHEN J. NEUBERGER, ESQ. (#4440)
CHERYL A. HERTZOG, ESQ. (*Pro Hac Vice*)
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com
CherylH@NeubergerLaw.com

Dated: February 29, 2008        Attorneys for Plaintiff

# TABLE OF CONTENTS

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    PLAINTIFF ENGAGED IN FIRST AMENDMENT PROTECTED SPEECH
      BY WAY OF HIS UNION MEMBERSHIP, UNION SOLIDARITY DEBATE
      WITH DEFENDANT MEARS, SYMBOLIC SPEECH REFUSING TO
      CROSS A PICKET LINE, AND RESIGNATION FROM CERT . . . . . . . . . . . 1

      A.    Protected Activity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

            1.    Symbolic Speech . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

            2.    Union Association . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

            3.    Speech as a Citizen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

            4.    Matter of Public Concern . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

            5.    Balancing of Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    Substantial or Motivating Factor . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

            1.    Plaintiff Suffered Adverse Action . . . . . . . . . . . . . . . . . . . . . . 2

            2.    Plaintiff's Protected Activity Was a Substantial or
                  Motivating Factor in the Retaliation Against Him . . . . . . . . . . . . 3

                  a.    The Wealth of Other Causal Evidence . . . . . . . . . . . . . . . . 3

      C.    Same Decision Anyway Affirmative Defense . . . . . . . . . . . . . . . . . . . . 4

II.   PLAINTIFF ENGAGED IN FIRST AMENDMENT PROTECTED
      PETITIONING WHEN HE FILED A UNION GRIEVANCE PURSUANT
      TO A VALID COLLECTIVE BARGAINING AGREEMENT . . . . . . . . . . . . . 6

III.  PLAINTIFF'S RELIANCE ON RECORD EVIDENCE IS PROPER
      UNDER THE FEDERAL RULES OF EVIDENCE . . . . . . . . . . . . . . . . . . . . 6

      A.    The Documents Defendants Appear to Challenge . . . . . . . . . . . . . . . . . 6

            1.    Plaintiff's Contemporaneously Created Handwritten Notes . . . . . 6

            2.    Plaintiff's Union Grievance . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

B.   The Relevant Rules of Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   1.   Present Sense Impression - Rule 803(1) . . . . . . . . . . . . . . . . . . . 7

   2.   Recorded Recollection - Rule 803(5) . . . . . . . . . . . . . . . . . . . . . 8

   3.   Business Record - Rule 803(6) . . . . . . . . . . . . . . . . . . . . . . . . . 9

   4.   Then Existing State of Mind - Rule 803(3) . . . . . . . . . . . . . . . . 9

   5.   Residual Exception - Rule 807 . . . . . . . . . . . . . . . . . . . . . . . . . 10

        a.   Guarantees of Trustworthiness . . . . . . . . . . . . . . . . . . . . . 11

             (1)   Plaintiff's Honesty and Character for
                   Truthfulness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

             (2)   Corroboration In the Record . . . . . . . . . . . . . . . . 12

        b.   Material Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        c.   Probative Value . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        d.   Interests of Justice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        e.   Sufficient Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

C.   The Interrogatory Responses are Admissible . . . . . . . . . . . . . . . . . . . . . 15

D.   Deposition Testimony Also is Admissible . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page**

Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.,
     247 F.3d 79 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11,13-15

Brennan v. Norton, 350 F.3d 399 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Callahan v. A.E.V., Inc., 182 F.3d 237 (3d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

Charpentier v. Godsil, 937 F.2d 859 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Garcetti v. Ceballos, 547 U.S. 410 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Hill v. City of Scranton, 411 F.3d 118 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,5

Huff v. White Motor Corporation, 609 F.2d 286 (7th Cir. 1979) . . . . . . . . . . . . . . . . . 11,13-15

Miller v. Cigna, Corp., 47 F.3d 586 (3d Cir. 1995) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . 3

Mount Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274 (1977) . . . . . . . . . . . . . . . . . . . . . . 4

Parle v. Runnels, 387 F.3d 1030 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Pickering v. Bd. of Educ., 391 U.S. 563 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Robinson v. Shapiro, 646 F.2d 734 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Stelwagon Mfg. Co. v. Tarmac Roofing Systems, Inc., 63 F.3d 1267 (3d Cir. 1995) . . . . . . . . 10

Suppan v. Dadonna, 203 F.3d 228 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

Tenafly v. The Borough of Tenafly, 309 F.3d 144 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 1

Troster v. Pennsylvania State Department of Corrections, 65 F.3d 1086 (3d Cir. 1995) . . . . . . . 1

U.S. v. Bailey, 581 F.2d 341 (3d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S. v. Wright, 363 F.3d 237 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Constitutions, Statutes, and Rules**

U.S. Const., Amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Federal Rule of Civil Procedure 8(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rule of Evidence 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Federal Rule of Evidence 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Federal Rule of Evidence 803(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Federal Rule of Evidence 803(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Federal Rule of Evidence 803(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Federal Rule of Evidence 803(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Federal Rule of Evidence 807 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11,13-16

<u>ARGUMENT</u>

I.    **PLAINTIFF[1] ENGAGED IN FIRST AMENDMENT PROTECTED SPEECH BY WAY OF HIS UNION MEMBERSHIP, UNION SOLIDARITY DEBATE WITH DEFENDANT MEARS, SYMBOLIC SPEECH REFUSING TO CROSS A PICKET LINE, AND RESIGNATION FROM CERT.**

   **A.  Protected Activity.**

   **1.  Symbolic Speech.**  Importantly, defendants do not contest that plaintiff engaged in symbolic speech when he resigned his position on CERT to support the union job action and, to show solidarity with his union brethren, he also refused to cross the picket line again.  As a result, plaintiff's symbolic speech, as set forth in detail in plaintiff's Opening and Answering Brief (POB at 22-25; PAB at 12)[2], taken in its proper context is clearly expressive conduct protected by the First Amendment. <u>See</u> <u>Tenafly v. The Borough of Tenafly</u>, 309 F.3d 144 (3d Cir. 2002); <u>Troster v. Pennsylvania State Department of Corrections</u>, 65 F.3d 1086 (3d Cir. 1995).

   **2.  Union Association.**  The defense claim that associating with a union does not receive First Amendment protection is clearly mistaken. (DAB at 19).  Plaintiff incorporates by reference the argument contained in his Opening and Answering Brief on this issue. (POB at 21; PAB at 11).

   **3.  Speech as a Citizen.**  Likewise, the defense claim that under <u>Garcetti v. Ceballos</u>, 547 U.S. 410 (2006), plaintiff's job duties as a prison guard and CERT member required him to debate union issues and refuse to cross a picket line is simply without merit.

---

   [1]  To reduce confusion, the decedent John J. Balas will be referenced as "plaintiff."

   [2]  All references to "POB" are to Plaintiff's Summary Judgment Opening Brief, (D.I.58), and references to "PAB" are to Plaintiff's Summary Judgment Answering Brief. (D.I.65).  Similarly, references to "DOB" are to Defendants' Summary Judgment Opening Brief, (D.I.55), and references to "DAB" are to Defendants' Summary Judgment Answering Brief. (D.I.67).

(DAB at 18-19).  Plaintiff incorporates by reference the extensive argument contained in his

Answering Brief on this issue. (PAB at 12-17)

       **4.  Matter of Public Concern.**  Additionally, defendants do not contest that the

message of plaintiff's speech was on matters of public concern involving critical public safety

issues as set forth in plaintiff's Opening and Answering Briefs. (POB at 25-30; PAB at 17).

Defendants' argument is simply barren of any discussion regarding the content, form and context

of plaintiff's speech.  Accordingly, given that defendants had their opportunity to address the

public concern element of the Free Speech paradigm and purposefully refused to do so, they have

conceded that plaintiff's speech was clearly on matters of public concern.

       **5.  Balancing of Interests.**  Further, defendants also fail to offer any weight on

the scale for the <u>Pickering</u> balancing.  Thus, as discussed in plaintiff's Opening and Answering

Briefs, it is clear that defendants have waived any disruption or balancing defense. (POB at 30-

31; PAB at 17).  Accordingly, plaintiff's speech is clearly protected by the free speech clause of

the First Amendment.

    **B.  Substantial or Motivating Factor.**

       **1.  Plaintiff Suffered Adverse Action.**  As discussed in great detail in plaintiff's

earlier briefs, the record is overflowing with evidence that plaintiff suffered from numerous

forms of retaliatory conduct sufficient to chill a person of ordinary firmness from exercising his

First Amendment rights.  (POB at 11-14; PAB at 22-28).  The defense efforts to try to view

individual instances of adverse action in isolation are insufficient under the case law which

recognizes that liability also may be established "based upon a continuing course of conduct even

though some or all of the conduct complained of would be *de minimis* by itself or if viewed in

isolation."  <u>Brennan v. Norton</u>, 350 F.3d 399, 419 n.16 (3d Cir. 2003); <u>see</u> <u>Suppan v. Dadonna</u>,

<div align="center">2</div>

203 F.3d 228, 235 (3d Cir. 2000) (noting that what is "trivial in detail may have been substantial in gross"). Thus this defense effort, like all the rest, is plainly without merit.

  **2. Plaintiff's Protected Activity Was a Substantial or Motivating Factor in the Retaliation Against Him.** The law in this regard is discussed in plaintiffs' earlier briefs. (See PAB at 28-30; POB at 32-35). However, it appears that defendants misunderstand this law. It is not plaintiff's burden to prove 'but for' causation. Suppan, 203 F.3d at 236. Instead, plaintiff need only demonstrate that his protected activity was a "substantial" or "motivating factor" in the relevant decision. Id. at 235. "'Substantial factor' does not mean 'dominant' or 'primary' factor." Hill v. City of Scranton, 411 F.3d 118, 126 n.11 (3d Cir. 2005). Instead, a plaintiff need only show that his protected First Amendment rights "played some substantial role in the relevant decision." Suppan, 203 F.3d at 236; see Miller v. Cigna, Corp., 47 F.3d 586, 597 n.9 (3d Cir. 1995) (en banc) ("played a role" in the adverse decision).

  All plaintiff has to do is demonstrate that his speech played a substantial role. Not the only role. Not the but for role. Not the determinative role. Not the dominant role. Not the primary role. Just a substantial one. And in light of the overwhelming record evidence in this regard discussed at length in plaintiff's earlier briefing, including defendant Mears' own admission that plaintiff's resignation from CERT "was a factor" in his decision to not give him a ranking of "Exceeds Expectations," (T.Mears 174-75; A749), it is clear that, at the very least, plaintiff's protected speech played a substantial role in the adverse actions being taken against him. No reasonable jury could conclude otherwise. That is plaintiff's burden and he has clearly met it.

  **a. The Wealth of Other Causal Evidence.** The wealth of causal evidence is discussed and analyzed in great detail in plaintiff's earlier filed briefs. (POB at 14-19;

PAB at 28-30).

**C. Same Decision Anyway Affirmative Defense.** Defendants allege that they are permitted to belatedly assert their affirmative defense at the summary judgment stage. (DAB at 27-30). But as the Third Circuit law cited in plaintiff's opening brief makes clear, such belated amendments are <u>not</u> permitted when the plaintiff is prejudiced by such a late addition. <u>See</u> <u>Charpentier v. Godsil</u>, 937 F.2d 859, 863 (3d Cir. 1991).

In our present case, the prejudice is clear. As discussed in plaintiff's earlier briefing (POB at 36; <u>see also</u> PAB at 30-31), because defendants never asserted their <u>Mt. Healthy</u> affirmative defense, plaintiff never took discovery on the issue. Plaintiff did not inquire into what defendant Mears would have done anyway or the usual line of questioning designed to explore such situations.

The defense claim that the affirmative defense was set forth in "specific responses" found in their answer is entirely misleading. (DAB at 28). Of the paragraphs cited by defendants, only one contains more words than simply "Denied." (DAB at 28 n.101). Thus, defendants argument that plaintiff should have been able to read defendants' mind in this regard reveals too much. (DAB at 24). If it was so central to their responsive pleading, it should have been asserted. Further, defendants denied nearly every paragraph in plaintiffs' complaint. Such blanket denials reveal nothing. The defense approach is simply a *post hoc* rationalization for their failure to comply with Fed.R.Civ.P. 8(c).

Plaintiff has taken numerous depositions in this case. Had defendants raised their affirmative defense, plaintiff would have asked specific questions of the witnesses on this issue. But because defendants did not assert it, plaintiff had no need to take such discovery. And it is this lack of discovery that causes severe prejudice to plaintiff by the belated defense assertion at

4

this late date after the close of discovery.

Similarly, the defense claim that the record establishes plaintiff was aware of defendant's intent to assert this defense is without merit. (DAB at 29). Contrary to defendants' wishful thinking, the record does not support such a claim. Defendants assert that defendant Mears "so testified" that he would have made the same decision anyway during his deposition," yet provide not one citation to his deposition to support this assertion. (Id.). Further, defendants' claim that there are "numerous references" regarding plaintiff's alleged performance issues which supports Mears' claim is equally without merit. (DAB at 29-30). Defendants can cite to no documentation or testimony to support this allegation, except to that of defendant Mears and the negative attachment he included with plaintiff's performance evaluation. As discussed in plaintiff's Answering Brief, the defendants' sole reliance on the testimony of an interested witness and defendant is improper at the summary judgment stage. (PAB at 3). See Hill, 411 F.3d at 131 n.22.

Further, there is no documentation in plaintiff's personnel record to support Mears' false claims of plaintiff's alleged performance problems because simply put, defendant Mears did not feel it was necessary (T.Mears 168; A747), and despite the DOC requirement that all such alleged performance problems be documented. (T.Mears Ex.9 at 4; Wilkinson 87-91; T.Mears 89-94; A821,935-36,727-29). Defendants can cite to no email, memorandum, letter, or even handwritten note proving plaintiff had performance problems during the time-period covered by the evaluation. Instead, as discussed in plaintiff's previous briefs, the record directly contradicts such a notion. (POB at 11-12; PAB at 23 n.11). Thus, it is counter-intuitive that Mears now seeks to rely on such "significant performance issues," (DAB at 30), to support his claim that he would have negatively evaluated plaintiff absent his protected conduct when at the time he did

5

not even find it necessary to ever mention or make any record of them.

## II.    PLAINTIFF ENGAGED IN FIRST AMENDMENT PROTECTED PETITIONING WHEN HE FILED A UNION GRIEVANCE PURSUANT TO A VALID COLLECTIVE BARGAINING AGREEMENT.

Plaintiff incorporates by reference the argument contained in his Opening and Answering Brief on this issue. (POB at 31; PAB at 17-19).

## III.    PLAINTIFF'S RELIANCE ON RECORD EVIDENCE IS PROPER UNDER THE FEDERAL RULES OF EVIDENCE.

Without any discussion of the rules of evidence or supporting case law, defendants summarily claim that various forms of evidence are hearsay and may not be considered.  (DAB at 14-16).  However, defendants fail to address any of the many applicable exceptions to the hearsay rule which allow the Court to review and consider this evidence.

**A. The Documents Defendants Appear to Challenge.**  Defendants appear to challenge the following documents.[3]

**1. Plaintiff's Contemporaneously Created Handwritten Notes.**  Plaintiff's contemporaneously created handwritten notes (T.Mears Ex.13; A850-52), are in his own handwriting (Adkins 2nd Declaration ¶¶3-5 [sic] (P823-24), attached hereto as Tab A), and were found by his wife at the family home (Adkins 45-46; A1008-9).  They address and describe the conversations and interactions plaintiff had with defendant Mears about his performance evaluation and Mears' refusal to follow Capt. Wilkinson's orders in this regard.  In it, plaintiff explains Mears' demeanor towards him.  Mears acted "disgusted" and "came across as bullying me" and "pressuring me."  (P529; A850).  In his own words, plaintiff explained that

I feel pressured, intimidated and stressed with [Lt. Mears] because I feel he is using his

---

[3]  To the extent defendants dispute other evidence, their failure to identify with specificity that specific evidence is fatal to their claims.

authority to make me feel this way because I resigned from CERT and this is his way to be v[i]ndictive towards me.

(P529; A850).  These documents reveal that plaintiff updated them throughout the day after each interaction he had with Mears. (P529-31; A850-52).

       **2.  Plaintiff's Union Grievance.**  Plaintiff's union grievance (P831-32; A587-88) explains and describes in plaintiff's own words and handwriting why plaintiff believed that his negative performance evaluation was unwarranted and describes and quotes his conversations with defendant Mears about it.  Plaintiff explains -

> I feel that Lt. Mears has a personal vendetta against me since I have resigned from CERT and he is showing discrimination towards myself.  I feel that is a conflict of interest, having Lt. Mears as my supervisor. ... I believe that Lt. Mears is evaluating me personally not professionally.

(P832; A588).

       **B.  The Relevant Rules of Evidence.**  The above evidence is admissible under the following rules.

       **1.  Present Sense Impression - Rule 803(1).**  Fed.R.Evid. 803(1) allows evidence in the form of -

> A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

As explained above, plaintiff's contemporaneously created handwritten notes are written statements describing and explaining several events including meetings and interactions with defendant Mears, his calls to Captain Wilkinson, plaintiff's observations and impressions of Mears' hostile demeanor towards him and plaintiff's reaction to that hostile demeanor.  (P529-31; A850-52).

       Further, based on the fact that each notation is separately dated and marked with the time

down to the minute, it is apparent that plaintiff wrote these statements immediately after each event occurred. For instance, plaintiff's first statement is dated "1-9-05" and indicates that at "1638" he had a meeting with defendant Mears and he proceeds to describe what occurred during the meeting. (P529; A850). Then on that same day, at "17:11" plaintiff sent Mears an email and at "20:35" he received his timecard. (P530; A851). Likewise, on "2-7-05" at "0915" he called the Warden's secretary. (P531; A852). Accordingly, it is apparent that plaintiff created these handwritten notes during the course of his days and interactions with Lt. Mears and updated it with each and every interaction as they continued to occur during the work day. Thus, this exception to the hearsay rule is satisfied.

   **2. Recorded Recollection - Rule 803(5).** Fed.R.Evid. 803(5) allows evidence in the form of -

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly.

   Plaintiff's handwritten notes concern a matter which he once had knowledge of, but is unable to now testify about due to his untimely death caused by defendants' retaliation against him. As discussed above, it is apparent that plaintiff created these notes directly after each event given that he indicated the date and exact time each event occurred. (P529-31; A850-52). Thus, when plaintiff created these notes the matter was "fresh" in his memory to correctly reflect his knowledge. Accordingly, this evidence rule is also satisfied with regard to plaintiff's handwritten notes.

   Similarly, plaintiff's grievance also falls within the recorded recollection exception. Clearly this document concerns a matter which plaintiff once had knowledge of, but is unable to

now testify about due to his untimely death.  Also given that plaintiff filed this grievance on

October 4, 2004, only eight days after he received the evaluation, the matter was "fresh" in his

memory. Id.  Accordingly, this exception applies to plaintiff's grievance as well.

> **3. Business Record - Rule 803(6).**  Fed.R.Evid. 803(6) allows evidence in the

form of -

> A memorandum, report, record, or data compilation, in any form, of acts, events,
> conditions, opinions...made at or near the time by...a person with knowledge, if kept in
> the course of a regularly conducted business activity, and if it was the regular practice of
> that business activity to make the memorandum, report, record, or data compilation, all as
> shown by the testimony of the custodian or other qualified witness.

The business record exception applies to plaintiff's grievance because it is clearly a

"record" of relevant "acts" and events" which plaintiff created and submitted to the union for

resolution mere days after he received his negative evaluation.   Importantly, the grievance was

created in keeping with the regular practice of COAD when DOC employees filed grievances.

As described by then COAD shop steward Michael Ackenbrack, once he gave the official

grievance form to plaintiff and signed the first page, it was then plaintiff's responsibility to

complete the grievance and submit it. (Ackenbrack 9,17, 30-31; A1039,1041,1045).  Here,

plaintiff completed the grievance form (Ackenbrack 24-25; A1043) and filed it. (Adkins 56;

A1011; see Ackenbrack 30-31,L.Mears 6,13 Foskey 38-39; A1045,1051-51,992).  Thus, as a

COAD business record kept in accord with the regular practice of employee grievances,

plaintiff's grievance is admissible under this exception.

> **4. Then Existing State of Mind - Rule 803(3).**  Fed.R.Evid. 803(3) provides that

otherwise hearsay evidence is admissible if it is a "statement of the declarant's then existing state

of mind ... such as ... mental feeling."   Such evidence cannot be used for proving the truth of the

matter asserted, id., but can be used for proving causation.  Callahan v. A.E.V., Inc., 182 F.3d

237, 251-52 (3d Cir. 1999); <u>Stelwagon Mfg. Co. v. Tarmac Roofing Systems, Inc.</u>, 63 F.3d 1267,

1274 (3d Cir. 1995).

Under this exception, the case law clearly allows plaintiff to offer the statements

contained within his handwritten notes and his union grievance, not to prove that the underlying

facts actually occurred but to prove causation, specifically - that he killed himself thereafter

because of the stress in the workplace caused by the retaliation.   In plaintiff's own words, "I feel

pressured, intimidated and stressed with ... Lt. Mears because I feel he is using his authority to

make me feel this way because I resigned from CERT and this is his way of being vindictive

towards me." (T.Mears Ex. 13; A850).  This evidence is key to establishing plaintiff's state of

mind when he killed himself.  Defendants claim plaintiff killed himself because of an affair.

Plaintiff seeks to prove that his death was the culmination in defendant Mears' long campaign of

retaliatory harassment against him.  Thus, this causal evidence is essential in light of the defense

position in this case.

**5. Residual Exception - Rule 807.**  Plaintiff's handwritten notes, his union

grievance and the other challenged statements discussed above also are admissible under the

"catchall" exception to the hearsay rule. <u>Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.</u>,

247 F.3d 79, 111 (3d Cir. 2001).  Fed.R.Evid. 807 states -

> A statement not specifically covered by Rule 803 or 804 but having equivalent
> circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the
> court determines that (A) the statement is offered as evidence of a material fact; (B) the
> statement is more probative on the point for which it is offered than any other evidence
> which the proponent can procure through reasonable efforts; and (C) the general purposes
> of these rules and the interests of justice will best be served by admission of the statement
> into evidence. However, a statement may not be admitted under this exception unless the
> proponent of it makes known to the adverse party sufficiently in advance of the trial or
> hearing to provide the adverse party with a fair opportunity to prepare to meet it, the
> proponent's intention to offer the statement and the particulars of it, including the name
> and address of the declarant.

As long as these specific requirements are met, the evidence is deemed admissible. See Huff v. White Motor Corporation, 609 F.2d 286, 292 (7th Cir. 1979).  Rule 807 is to be used in "a rather unique combination of circumstances where a material fact can be proved only through one method, or, in this case, rebutted by only one method." Bohler-Uddeholm, 247 F.3d at 113.  In applying this exception, the district court is afforded "a considerable measure of discretion." Huff, 609 F.2d at 291.

   **a.  Guarantees of Trustworthiness.**  "Evidence admissible under the residual exception must have '[e]quivalent circumstantial guarantees of trustworthiness.'" Id. These circumstantial guarantees are based on those existing at the time the statement was made. Id. Thus, "the trustworthiness of a statement should be analyzed by evaluating not only the facts corroborating the veracity of the statement, but also the circumstances in which the declarant made the statement and the incentive he had to speak truthfully or falsely." U.S. v. Bailey, 581 F.2d 341, 349 (3d Cir. 1978).  An assessment of the guarantees of trustworthiness "is necessarily highly fact-specific." U.S. v. Wright, 363 F.3d 237, 246 (3d Cir. 2004).  Thus based on the unique combination of facts and circumstances present in this case, plaintiff's handwritten notes contain the circumstantial guarantees of trustworthiness. See Parle v. Runnels, 387 F.3d 1030, 1040-42 (9th Cir. 2004) (finding admissible the nontestimonial diary of an unavailable declarant when a close examination of the diary and the circumstances surrounding its creation indicated it contains particularized guarantees of trustworthiness.)

   **(1).  Plaintiff's Honesty and Character for Truthfulness.**  As defendant Mears himself testified at length, plaintiff was "trustworthy," "honest," "a man of personal integrity" and was not a "liar."  (T.Mears 55,181; A719,750).  Indeed, numerous witnesses confirmed this and testified to the same. (See, e.g. Deloy 45-46; Wilkinson 48; Foskey

16; Bradley 9; West 8; Shockley 18; A719,750,904-05,925,986, 876,887,958).  Accordingly, it

would clearly be out of character for plaintiff to lie about something job related.  Indeed,

defendants can point to no motive for plaintiff to lie in his own handwritten notes to himself.

        **(2).  Corroboration In the Record.**  Similarly, defendant Truman

Mears, defendant Captain Wilkinson and witness Lee Mears each have corroborated facts

contained in many of the challenged documents.  For example, defendants Truman Mears and

Captain Wilkinson corroborated virtually everything plaintiff said about the battle over how to

address plaintiff's negative evaluation how defendant Mears ignored Capt. Wilkinson's order

about how to address the matter and contradictorily submitted it without plaintiff signature.

(T.Mears Ex.11;Wilkinson 67,70,80; T.Mears 155-57; A839,930-31,933,744).  Similarly,

plaintiff's written statements that defendant Truman Mears was harassing him in the workplace

because of the CERT resignation is corroborated by witness Lee Mears' testimony that "John got,

you know, more of the brunt of it" than anyone else did.  (L.Mears 8; A1051).  The record also

otherwise supports the statements made in plaintiff's notes and the grievance.

- Plaintiff did not agree and was unhappy with the evaluation's rating. (Wilkinson 55-56, Deloy 49, Adkins 36,138, L.Mears 27-28, Foskey 36; A927,905,1006,1032,1056,991)

- Plaintiff felt defendant Mears was evaluating him personally. (L.Mears 28; A1056; <u>see</u> Deloy 52; A906).

- Plaintiff in fact received a "Meets Expectations" rating. (T.Mears Ex.11; A838,840).

- There is no mention in his evaluation about a letter from the Commissioner about his perfect attendance. (T.Mears Ex.11; A840,746).  In fact, this exact letter is part of the established record. (T.Mears Ex.8; A815).

- There is no mention in his evaluation of commendation from Major Townsend for QRT Training. (T.Mears Ex.11; T.Mears 164; A840).  This commendation is also in the record. (T.Mears Ex.8;P827-28; A816,585-86).

- That for the last four years he received "Exceeds Expectations." (T.Mears Ex.5-7; T.Mears Ex.11; A783-88,840).

- That plaintiff did not sign the evaluation. (T.Mears 187; T.Mears Ex.11; A752,839).

        **b. Material Fact.**  This evidence also is relevant to several material facts. Bohler-Uddeholm, 247 F.3d at 112; Fed.R.Evid. 807.  This requirement is closely akin to a relevance requirement. Huff, 609 F.2d at 294.  Thus, in order to be relevant and on a material fact, the evidence must be "of consequence to the determination of the action." Id.; Fed.R.Evid. 401.  Likewise, to meet the relevancy requirement, the evidence must "tend to make the existence of that fact...more probable or less probable than it would be without the evidence." Id. (internal punctuation omitted).

        Here, plaintiff's handwritten notes and grievance discuss the adverse action at issue, including the negative performance evaluation, the denial of a meeting with his supervisors and union representative, Mears' submission of the evaluation without plaintiff's signature, and denial of his timecard, all of which are material to the case.  In the same way, these documents contain contemporaneously created evidence of defendant Mears' hostility and antagonism towards plaintiff.  Thus they clearly meet the relevancy requirement.

        **c. Probative Value.**  The evidence must also be more probative on the point for which it is offered than any other evidence which the proponent could procure through reasonable efforts. Bohler-Uddeholm, 247 F.3d at 112; Huff, 609 F.2d at 294-95; Fed.R.Evid. 807.  Here, because defendants drove plaintiff to kill himself by making his life miserable in the workplace, plaintiff is unable to offer his own testimony regarding the events surrounding this case.  Plaintiff's handwritten notes and grievance are the closest item in existence to plaintiff's

own testimony. Additionally, the grievance is the only evidence which directly contradicts defendant Mears' testimony that plaintiff never read his evaluation. (T.Mears 149,152-54,187; A742-44,752; DAB at 21). The grievance clearly states, "I read over the evaluation." (P832; A588). Accordingly, these documents also are relevant to establishing that Mears is prevaricating.

        **d. Interests of Justice.** Likewise, such evidence also is admissible if "the general purpose of the rules, fairness and the administration of justice, would be served by admitting the [evidence], because it would assist the jury in determining the truth." Bohler-Uddeholm, 247 F.3d at 113; Fed.R.Evid. 807. The general purposes set forth in the Rules of Evidence state that they "shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." Fed.R.Evid. 102.

        Here, the general purposes of the evidentiary rules are served by the admission of this evidence since the jury will be able to read plaintiff's own contemporaneously created words about the events around which this case centers, instead of only the testimony of the man who drove him to kill himself. "There is no reason to believe the jury will not be equipped to evaluate the evidence." Huff, 609 F.2d at 295. This evidence only increases the likelihood that they jury will ascertain the truth and is in accord with the general purposes of the evidentiary rules. Id. Obviously, fairness and justice require that plaintiff, while deceased, have a voice in his own lawsuit about the cause of his death.

        Additionally, the equities also tilt in favor of allowing this evidence. If the jury agrees with the abundant evidence in the record, that finding will conclusively establish that defendant

Mears drove plaintiff to take his own life in retaliation for his union activities. In other words, plaintiff is dead because that defendant drove him to kill himself. That defendant's actions are the equivalent of evidence destruction - by driving plaintiff to kill himself, he destroyed the best source of testimonial evidence that exists - plaintiff. Defendants cannot now cry foul that plaintiff fortuitously created contemporaneous written records describing some of the retaliatory conduct against him that soon drove him to take his own life.

**e. Sufficient Notice.** Obviously, plaintiff has provided sufficient notice to defendants that these documents would be used since they were produced during the early stages of discovery, cited to in plaintiff's Opening Brief and included in the Appendix, and defendants' raise an argument about them in their Opening Brief. Defendants have been afforded "fair opportunity to prepare to meet it." Huff, 609 F.2d at 295. Therefore, the notice requirement has been satisfied. See Bohler-Uddeholm, 247 F.3d at 113; Fed.R.Evid. 807.

**C. The Interrogatory Responses are Admissible.** Additionally, defendants summarily state the entire interrogatory response is hearsay without any further discussion or citations to specific portions they feel are hearsay and unreliable. Instead, defendants simply argue that plaintiff's widow "has no personal knowledge of any of the allegations in the Complaint." (DAB at 15). Defendants have not only misrepresented the record, but have clearly failed to address the many aspects alleged in this case where plaintiff's widow has personal knowledge and is the best witness to attest to the facts.

For example, the widow has intimate, personal knowledge regarding plaintiff's change in personality during the Fall of 2004 and Winter of 2005 which supports plaintiff's temporal proximity argument for causation, as well as plaintiff's damages argument. (POB at 16 and n.12; PAB at 9-10; See Inter. Resp. #20; A695-702). Likewise, plaintiff's widow clearly had

knowledge that plaintiff was a "loving, caring husband and father of two young children" (POB at 1) and that he was a "Corporal and an eleven year employee of the DOC" (POB at 2). Thus, the entire interrogatory response cannot be removed from the Court's consideration to the extent plaintiff's widow has personal knowledge about facts contained within.

Similarly, defendants fail to point out that as the widow clearly stated during the widow's deposition, some of her base of knowledge for the Interrogatories was gathered from her attorney's interview of witnesses. (Adkins 29; A1004). Thus, while some citations to these portions of the Interrogatories were used in plaintiff's briefs, they are also followed by citations to supporting declarations and deposition testimony, which is clearly admissible. Consequently, there is no prejudice to defendants of citations to the interrogatory responses since they are adequately supported by the established record.

**D. The Deposition Testimony Also is Admissible.** To the extent defendants are challenging unidentified deposition testimony relating to statements plaintiff told the witness during his lifetime, these statements also fall into the various exceptions to the hearsay rule described above. As discussed above, the residual exception of the hearsay rule allows for this evidence, which under ordinary circumstances may be deemed hearsay, to be admitted for the truth of the matter asserted. Fed.R.Evid. 807; See Robinson v. Shapiro, 646 F.2d 734, 741-43 (2d Cir. 1981) (admitting testimony of deceased witness when the evidence contained the circumstantial guarantees of trustworthiness and satisfied the requirements of the residual exception).

## **CONCLUSION**

For the above stated reasons, and those set forth in plaintiff's opening and answering briefs, the Court should grant partial summary judgment for plaintiff on liability for plaintiff's

16

First Amendment speech and petition clause counts and order a trial on damages alone against

defendant Mears.

<div style="margin-left: 40%">

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
**THOMAS S. NEUBERGER, ESQ. (#243)**
**CHERYL A. HERTZOG, ESQ. (*Pro Hac Vice*)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com
CherylH@NeubergerLaw.com

</div>

Dated: February 29, 2008            Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas S. Neuberger, being a member of the bar of this Court do hereby certify that on

February 29, 2008, I filed this **Reply** with the Clerk of the Court using CM/ECF which will send

notification of such filing to the following:

>
>Ralph Durstein, Esquire
>Stacey Xarhoulakos, Esquire
>Department of Justice
>Carvel State Office Building
>820 North French Street
>Wilmington, DE 19801

<div align="right">

/s/ Thomas S. Neuberger
**THOMAS S. NEUBERGER, ESQ.**

</div>

Balas \ Briefs \ SJRB.final

# Tab

# A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CINDY L. BALAS a/k/a CINDY L. ADKINS, :
**Executrix of the Estate of CORPORAL JOHN J.** :
**BALAS,** :
                                                  :
      **Plaintiff,**                     :
                                                  :
    **v.**                                   :    **C.A. No. 06-592-JJF**
                                                  :
**STANLEY W. TAYLOR, JR., individually and** :
**in his official capacity as the Commissioner of** :
**Correction; ALAN MACHTINGER,** :
**individually and in his official capacity as the** :
**Director of Human Resources of the Department** :
**of Correction; MICHAEL DELOY, individually** :
**and in his official capacity as Deputy Warden of** :
**Sussex Correctional Institution; CAPTAIN** :
**DAVID WILKINSON, individually;** :
**LIEUTENANT TRUMAN MEARS,** :
**individually; and DEPARTMENT OF** :
**CORRECTION OF THE STATE OF** :
**DELAWARE,** :
                                                  :
      **Defendants.**                   :

### SECOND UNSWORN DECLARATION OF CINDY ADKINS
### UNDER 28 U.S.C. § 1746

    I, Cindy Adkins, hereby depose and state as follows:

    1. I have personal knowledge of the facts contained in this declaration and, if called as a

witness, I am competent to testify as to those facts.

    2. I am the widow of John J. Balas.  We were married from December 1991 until his

untimely death on February 19, 2005.

    3. I can attest to the genuineness of John Balas' handwriting, based upon my familiarity

with his handwriting prior to and during our marriage.

4. I acquired a sufficient familiarity with the handwriting of John Balas because prior to and during our marriage I witnessed him write and I also received correspondence in his handwriting.

4. The pages marked P523-531 and P519-520 produced to defendants contain notes, notations, memoirs and/or statements in the handwriting of John Balas.

_Cindy L Adkins_
**Cindy Adkins**

I declare under penalty of perjury that the foregoing is true and correct.   Executed on December _6_, 2007.

Balas / Pleadings / Declaration / Cindy Adkins 2nd Declaration

2