IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CINDY L. BALAS a/k/a CINDY L. ADKINS,** Executrix of the Estate of CORPORAL JOHN J. BALAS, | : : : : | |
| **Plaintiff,** | : : | |
| v. | : : | C.A.No. 06-592-JJF |
| **STANLEY W. TAYLOR, JR.,** individually and in his official capacity as the Commissioner of Correction; **ALAN MACHTINGER,** individually and in his official capacity as the Director of Human Resources of the Department of Correction; **MICHAEL DELOY,** individually and in his official capacity as Deputy Warden of Sussex Correctional Institution; **CAPTAIN DAVID WILKINSON,** individually; **LIEUTENANT TRUMAN MEARS,** individually; and **DEPARTMENT OF CORRECTION OF THE STATE OF DELAWARE,** | : : : : : : : : : : : : : : : | |
| **Defendants.** | : | |

**PLAINTIFF'S MOTION IN LIMINE TO BAR THE DEFENSE FROM NOW DENYING WHAT WAS ADMITTED IN THEIR ANSWER**

THE NEUBERGER FIRM, P.A.
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: July 18, 2008                    Attorneys for Plaintiff

**A. Introduction.**  The Complaint in this case was filed on September 26, 2006. (D.I. 1). The defense requested and was given numerous extensions of time on the due date for their Answer.  No doubt the defense used this time to conduct their due diligence investigation.  Finally, almost five months later, on February 6, 2007, the defense filed their long awaited Answer (D.I. 9), in which they admitted numerous facts and issues.

Discovery commenced as to the facts denied, eventually concluded and the parties are presently on the eve of trial.  Now, long after the close of discovery and even longer after plaintiff relied to her detriment on the defense Answer which narrowed the nature and scope of the discovery needed in this case, the defense seeks to deny numerous matters long ago admitted in their Answer.  A list of those judicial admissions from which the defense now seeks to run is attached at Tab A.  As explained below, this defense flip-flop is improper and is flatly barred by binding District of Delaware and Third Circuit precedent.

**B. Judicial Admissions.**  As our District has explained, an "admission in a pleading is a judicial admission, which is binding on the litigant."  Donald M. Durkin Contracting, Inc. v. City of Newark, 2006 WL 2724882, *6 (D.Del. Sept. 22, 2006).  In the Third Circuit's words, "judicial admissions are binding for the purpose of the case in which the admissions are made."  Glick v. White Motor Co., 458 F.2d 1287, 1291 (3d Cir. 1972).  "If factual matters in issue have been judicially admitted, *they are binding on the tendering party*."  Donald M. Durkin Contracting, 2006 WL 2724882, *6 (emphasis added).

"It is axiomatic that a party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.  Courts have specifically found that admissions in a party's answer constitute judicial admissions to which the party is

1

subsequently bound." Marathon Enter., Inc. v. Schroter GMBH & Co, 2003 WL 355238, *4 (S.D.N.Y. 2003) (internal punctuation and citations omitted). "[M]atters admitted in a defendant's answer require neither proof nor finding." Martinez v. Cornell Corrections of Texas, Inc., 229 F.R.D. 236, 238 (D.N.M. 2005) (internal punctuation omitted). Indeed, numerous courts have held that matters admitted by a defendant in their Answer are deemed conclusively admitted for the purposes of the litigation.[1]

As the District of New Jersey has explained, it is certainly not unfair to hold a party "to its unambiguous and plainly worded statements, deliberately drafted by counsel for the express purpose of limiting and defining the facts at issue." In re Cendant Corp., 109 F.Supp.2d at 230 (internal punctuation omitted).

**C. Conclusion.** For the reasons set forth above, the Court should bar defendants from now denying those matters admitted in their Answer.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**

---

[1] See Nat'l Ass'n of Life Underwriters, Inc. v. Comm'r of Internal Revenue, 30 F.3d 1526, 1530 (D.C.Cir. 1994); Missouri Hous. Develop. Comm'n v. Brice, 919 F.2d 1306, 1314 (8th Cir. 1990); Schott Motorcycle Supply, Inc. v. Amer. Honda Motor Co., Inc., 976 F.2d 58, 61 (1st Cir. 1992); Bright v. QSP, Inc., 20 F.3d 1300, 1305 (4th Cir. 1994); Knudsen v. U.S., 254 F.3d 747, 752 (8th Cir. 2001); Dunham v. City of O'Fallon, 945 F.Supp. 1256, 1261 (E.D.Mo. 1996); Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc., 87 F.Supp.2d 394, 405 (D.N.J. 2000); In re Cendant Corp., 109 F.Supp.2d 225, 230 (D.N.J. 2000); Dortz v. City of N.Y., 904 F.Supp. 127, 146 n.6 (S.D.N.Y. 1995); Mitchell v. Allen, 1994 WL 66099, *4 (N.D.Ill. March 3, 1994).

                                              Two East Seventh Street, Suite 302
                                              Wilmington, Delaware 19801
                                              (302) 655-0582
                                              TSN@NeubergerLaw.com
                                              SJN@NeubergerLaw.com

Dated: July 18, 2008                    Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

      I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on July 18, 2008, I filed this **Pleading** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

      Ralph Durstein, Esquire
      Stacey Stewart, Esquire
      Department of Justice
      Carvel State Office Building
      820 North French Street
      Wilmington, DE 19801

      /s/ Stephen J. Neuberger
      **STEPHEN J. NEUBERGER, ESQ.**

**Contested Defense Admissions from Defendants' Answer**

1. On June 1, 2002, COAD was certified as the exclusive bargaining representative for all correctional officers up to and including Sergeants and also for other positions which require basic correctional officer training plus a primary skill. (Compl. & Ans. ¶12).

2. Throughout 2003 and 2004, COAD members engaged in negotiations with DOC. (Compl. & Ans. ¶14-16).

3. DOC employees raised various issues, such as security, minimum staffing, overtime, salary and turnover, in the course of collective bargaining and negotiations conducted by COAD. (Compl.&Ans. ¶17-21).

4. The State of New Jersey pays a higher starting salary to correctional officers than Delaware pays to its correctional officers. (Compl. & Ans. ¶19).

5. On July 12, 2004, a female counselor at Delaware Correctional Center was assaulted by an inmate and held hostage, before being rescued. COAD raised the issue of employee security in the context of labor negotiations. (Compl. & Ans. ¶22).

6. COAD sought to promote the interests of DOC employees in the context of contract negotiations. (Compl. & Ans. ¶23).

7. At this time, the news media reported on issues involving the DOC. (Compl. & Ans. ¶23).

8. The contract negotiations between management and COAD were ongoing, constructive, and at times contentious. (Compl. & Ans. ¶24).

9. Governor Minner and Commissioner Stan Taylor monitored the effects on the court system caused by the job action. (Compl. & Ans. ¶29).

10. On August 5, 2004, the Governor filed a lawsuit in Chancery Court and sought a Temporary Restraining Order to end the job action ("TRO") naming COAD leaders as defendants. The TRO was denied. (Compl. & Ans. ¶30).

11. The action of Decedent and the other CERT members in resigning their positions on the CERT Team was taken to pursue employee grievances in the context of collective bargaining and contract negotiations. (Compl. & Ans. ¶35).

12. DOC employees participated in a job action by refusing to work their scheduled job assignments in the Court and Transportation Unit. This failure to report for work caused concerns and problems for judges and prosecutors. (Compl. & Ans. ¶25-26).

13. Months after resigning from CERT, in the context of a dispute over a performance

   evaluation, the decedent asked for a transfer from defendant Truman Mears to another supervisor. (Compl. & Ans. ¶55,80).

14. In previous evaluations, Mears recognized the decedent's perfect attendance records and mentioned his CERT membership as areas where his performance was distinguished or exceeded expectations and ranked him as "Exceeds Expectations." (Compl. & Ans. ¶62).

15. Decedent contacted Capt. Wilkinson regarding his refusal to sign his performance evaluation. (Compl. & Ans. ¶71).

16. In February, decedent asked that his performance evaluation be returned to him. (Compl. & Ans. ¶74).

17. As part of his home record keeping, the decedent periodically made copies of his time cards. (Compl. & Ans. ¶77).

18. The decedent mentioned changes on his timecards regarding the use of emergency vacation days to Captain Wilkinson, who discussed it with Lt. Mears, who agreed to remove the "emergency" notations. (Compl. & Ans. ¶78).

19. Further, under the State Merit Law, 29 Del.C. §5927, performance records are considered in determining salary increases, promotions, transfers, and other employment actions. (Compl. & Ans. ¶68).

20. At all times material hereto the individual defendants and their agents were acting under color of law. (Compl. & Ans. ¶103).