IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **CINDY L. BALAS a/k/a CINDY L. ADKINS,** Executrix of the Estate of CORPORAL JOHN J. BALAS, | : : : : | |
| Plaintiff, | : : | |
| v. | : : | C.A.No. 06-592-JJF |
| **LIEUTENANT TRUMAN MEARS,** | : : | |
| Defendant. | : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE ADMISSION OF NEWS ARTICLES [PX 1] AND REFERENCE TO OTHER EVIDENCE**

                                                           **THE NEUBERGER FIRM, P.A.**
                                                           **THOMAS S. NEUBERGER, ESQ. (#243)**
                                                           **STEPHEN J. NEUBERGER, ESQ. (#4440)**
                                                           Two East Seventh Street, Suite 302
                                                           Wilmington, DE 19801
                                                           (302) 655-0582
                                                           TSN@NeubergerLaw.com
                                                           SJN@NeubergerLaw.com

Dated: August 1, 2008                     Attorneys for Plaintiff

**A. Rule 401-402 (Relevance).** "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. "Rule 401 does not raise a high standard." Hurley v. Atlantic City Police Dept., 174 F.3d 95, 109-110 (3d Cir. 1999). "[E]vidence is irrelevant only when it has no tendency to prove [a consequential fact]." Spain v. Gallegos, 26 F.3d 439, 452 (3d Cir. 1994). Thus the rule, "while giving judges great freedom to admit evidence, diminishes substantially their authority to exclude evidence as irrelevant." Id.

PX1 is relevant to defendant Mears' state of mind and motivation to retaliate against plaintiff. It reveals that the multitude of problems at DOC were receiving widespread statewide media attention for the entire year up to and including August 2004 when plaintiff's symbolic resignation occurred, and all of these things cast both the Governor and DOC in a very negative light, all in the midst of a hotly contested gubernatorial campaign. It is undisputed that DOC employees such as Mears have to take their "marching orders from the governor." (Wilkinson 76; A932).[1] PX1 tends to prove Mears' state of mind and motive for wanting to punish and silence plaintiff, an employee under his direct command who caused the Governor and DOC to receive even more adverse publicity as a result of his resignation. Mears could not stop plaintiff from resigning from CERT, but was now in a position to punish him for the same.

PX1 also tends to demonstrate that plaintiff's union speech and association was not on a matter of purely private personal concern but related to matters of important public concern since

---

[1] Unless otherwise indicated, record cites are to plaintiff's summary judgment appendix. (D.I. 59-64).

1

the plethora of problems at the DOC were constantly in the media.[2]  Accordingly, the defense relevance objections fail.

   **B. Rule 801-802, 805 (Non-Hearsay Purpose).**  These articles are not being offered for the truth of the matter asserted but instead to demonstrate the defendant's state of mind and motive to retaliate against plaintiff, as well as to demonstrate the public concern in and value of plaintiff's protected activity.   By definition, this is not hearsay.  See Fed.R.Evid. 801(c).  The defense claim that the definition of hearsay "is a distinction that is invalid" (OB at ¶ 1), is non-sensical in that it claims that the Congressionally sanctioned definition of hearsay is irrelevant in determining whether an exhibit is hearsay.  By definition, these articles are not hearsay because they are offered for a non-hearsay purpose.  Accordingly, a hearsay objection cannot bar their use for a non-hearsay purpose.[3]

  Plaintiff simply does not offer these articles to prove the truth or falsity of their contents. The courts regularly sanction the use of newspaper articles when being offered for purposes unrelated to the truth of their contents.  See, e.g. Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital, 435 F.3d 396, 401 n.15 (3d Cir. 2006) (taking judicial notice of newspaper articles to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.").  Accordingly, the defense hearsay objections fail.

   **C. Rule 403.**  Initially, given that Rule 403 requires that the probative value of PX1 be "substantially outweighed" by the other 403 considerations, and the defense has not claimed any

---

[2]  The defense offer to stipulate to this fact does not address PX1's relevance to Mears' motive and state of mind.

[3]  Any defense concerns about the content of the articles can be resolved by a limiting instruction from the Court.  For example, the Court could instruct that the evidence is being offered to show the state of mind of the defendant and what was in the public realm at the time.

such "substantial" outweighing, the defense motion should be denied.

Additionally, the probative value of these articles as a whole is significant and clearly outweighs any competing considerations. As explained above, these articles are key to demonstrating defendant Mears' retaliatory intent. This defendant flatly denied any retaliatory animus whatsoever, which is not surprising. Cf. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1082 (3d Cir. 1996) ("[d]efendants of even minimal sophistication will neither admit discriminatory animus or leave a paper trial demonstrating it."). Nonetheless, plaintiff is left to prove Mears' retaliatory animus by way of circumstantial evidence, see, e.g. Kane v. Krebser, 44 F.Supp.2d 542, 547 (S.D.N.Y. 1999) ("Circumstantial evidence is often the only means available to prove ... claims of retaliation."), and PX1 is an integral piece of doing just that.

From the testimony alone, the jury cannot begin to comprehend the public firestorm that erupted in the Delaware media in 2004 surrounding the numerous problems at the DOC. The sheer volume and mass of material contained in PX1 - 441 pages of newspaper articles - speaks to the size of this media uproar, which tarnished the name and reputation of the governor and the DOC. It then places plaintiff's First Amendment speech and association in the proper context. Plaintiff created one more headache for the Governor and DOC, a headache which caused even more adverse media attention. As Captain Wilkinson testified, the DOC takes its "marching orders from the governor." (Wilkinson 76; A932). PX1 tends to prove Mears' state of mind and motive for wanting to punish and silence plaintiff, an employee under his direct command who caused the governor and DOC to receive even more adverse publicity as a result of his resignation. Mears could not stop plaintiff from resigning from CERT, but was now in a position to punish him for the same. Thus, PX1 is clearly relevant to demonstrating Mears' retaliatory intent and state of mind.

Additionally, plaintiff does not intend to go through every article with the jury, so defense concerns about confusion and waste of time are allayed. Instead, when several of the witnesses testify about the widespread negative media attention that was harshly focused upon the DOC in 2004, those witnesses will be able to point to PX1 as representative of that media attention. A picture is worth a thousand words and the ability of these witnesses to point to a stack of 441 pages of negative media attention focused upon the DOC will speak volumes. Moreover, to the extent that the defendant denies or may deny at trial that the DOC was getting hammered in the media on a near daily basis, these articles can be used to quickly and easily impeach his denials as incredible.

Last, the defense request that the Court admonish plaintiff's counsel is unnecessary and needlessly inflammatory. The DOC security breakdown which led to the rape of a civilian employee within the DOC, as well as the numerous other security breakdowns caused by dangerously low levels of understaffing in DOC prisons throughout the state were addressed in plaintiff's earlier briefing. (D.I. 58 at 2-7). These are just two of many areas that were inquired into during the course of discovery to establish the overall context within which plaintiff's union speech and association occurred. They are necessary legal inquiries to establishing the public concern nature of plaintiff's speech. The defense refused to concede that plaintiff's speech was on a matter of paramount public concern so this factual inquiry during discovery was entirely proper and necessary to the litigation of this First Amendment claim. Of course, the fact that the dire safety prognostications publicly aired by the prison guard's union - the very union to which plaintiff also asserts he was retaliated against for supporting - came true is certainly compelling evidence of the public concern nature of plaintiff's speech and association with the vocal union. It also is compelling evidence of a motive to retaliate against plaintiff whose actions, speech and

association were causing the DOC and the governor to look even worse publicly, at a time when they thought they could sink no lower.

**C. Conclusion.** For the reasons set forth above, the Court should deny the defense motion in its entirety.[4]

                      Respectfully Submitted,

                      **THE NEUBERGER FIRM, P.A.**

                      /s/ Stephen J. Neuberger
                      **THOMAS S. NEUBERGER, ESQ. (#243)**
                      **STEPHEN J. NEUBERGER, ESQ. (#4440)**
                      Two East Seventh Street, Suite 302
                      Wilmington, Delaware 19801
                      (302) 655-0582
                      TSN@NeubergerLaw.com
                      SJN@NeubergerLaw.com

Dated: August 1, 2008           Attorneys for Plaintiff

---

[4] Notably, the defense motions in limine reveal that it has abandoned its objections raised in the pretrial order to PX 2, 5, 7, 14, 17, 19 and 20-22.

## CERTIFICATE OF SERVICE

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on August 1, 2008, I filed this **Pleading** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

>Ralph Durstein, Esquire
>Stacey Stewart, Esquire
>Department of Justice
>Carvel State Office Building
>820 North French Street
>Wilmington, DE 19801

>/s/ Stephen J. Neuberger
>**STEPHEN J. NEUBERGER, ESQ.**