# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CINDY L. BALAS a/k/a CINDY L. ADKINS, Executrix of the Estate of CORPORAL JOHN J. BALAS, | : : : : | |
| Plaintiff, | : : | |
| v. | : : | C.A.No. 06-592-JJF |
| LIEUTENANT TRUMAN MEARS, | : : | |
| Defendant. | : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE THE COAD GRIEVANCE [PX 6] AND RELATED TESTIMONY OR ARGUMENT**

THE NEUBERGER FIRM, P.A.
THOMAS S. NEUBERGER, ESQ. (#243)
STEPHEN J. NEUBERGER, ESQ. (#4440)
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: August 1, 2008           Attorneys for Plaintiff

**A. Facts.** Plaintiff's union grievance (Tab A - PX6) recounts key events, explains why his negative performance evaluation was unwarranted and describes and quotes his conversations with defendant Mears about it. It concludes with -

> I feel that Lt. Mears has a personal vendetta against me since I have resigned from CERT and he is showing discrimination towards myself. I feel that is a conflict of interest, having Lt. Mears as my supervisor. ... I believe that Lt. Mears is evaluating me personally not professionally.

**B. Rule 803(5) (Recorded Recollection).** "A hearsay exception for recorded recollection is generally recognized and has been described as having 'long been favored by the federal and practically all the state courts that have had occasion to decide the question.'" Fed.R.Evid. 803 Advisory Committee's Notes (quoting <u>U.S. v. Kelly</u>, 349 F.2d 720, 770 (2d Cir. 1965)). Fed.R.Evid. 803(5) defines recorded recollection as-

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, known to have been made or adopted by the witness when the matter was fresh in the witnesses memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Citing no legal authority, the defense wrongly claims that this rule may only be used to refresh the recollection of a forgetful witness. First, the text of the rule flatly contradicts this false claim. Second, the defense has confused rules. <u>Compare</u> Fed.R.Evid. 803(5) <u>with</u> Fed.R.Evid. 612.

Although ignored by the defense, it is clear that the rule requires a party to "show that (1) the witness now has insufficient recollection to enable him to testify fully and accurately; and (2) the statement was made or adopted at a time when the subject matter was fresh in the witness's memory." <u>Tracinda Corp. v. Daimlerchrysler AG</u>, 362 F.Supp.2d 487, 496 (D.Del. 2005); <u>see</u> <u>U.S. v. Mornan</u>, 413 F.3d 372, 377 (3d Cir. 2005). The first requirement is met given that plaintiff is dead, (Compl. & Ans. ¶¶ 1), and thus unable to walk into a courtroom and testify.

1

The second requirement also is met. As the Third Circuit has explained, the fact that a "written recording ... was either made or adopted" by a witness can be demonstrated by the witness's "signature on the writing." Mornan, 413 F.3d at 378. Here, the written grievance clearly contains plaintiff's signature on page 1, which he signed, submitted and filed on October 4, 2004. (Tab A - PX 6 at 1).[1] The grievance was even given a file number by the union. (Id.; Ackenbrack 12; A1040). It is in plaintiff's own handwriting (Tab B at 3) and is dated only eight days after he received the evaluation, so the matter was still 'fresh' in his memory.[2]

Plaintiff's death also does not end the inquiry.

> It is not a *sine qua non* of admissibility that the witness actually vouch for the accuracy of the written memorandum. Admissibility is, instead, to be determined on a case-by-case basis upon consideration ... of factors indicating trustworthiness, or the lack thereof.

U.S. v. Porter, 986 F.2d 1014, 1017 (6th Cir. 1993). The rule applies "regardless of the declarant's ability to testify, and thus apparently does not contemplate that the declarant will always testify, let alone affirmatively vouch for the record's accuracy." State v. Derouin, 64 P.3d 35, 44 (Wash. Ct. App 2003). In Porter, a witness was "'screwed up' on drugs at about the time the statement was made" and so was unable to vouch for the accuracy of her recorded recollection. Porter, 986 F.2d at 1017. The court held that the "detail in [a] statement" together with "the care with which it was put together" can demonstrate that a recorded recollection

---

[1] The evidence strongly suggests that the grievance was actually filed. (Adkins 56; A1011; see Ackenbrack 30-31,L.Mears 6,13 Foskey 38-39; A1045,1051-51,992). Unless otherwise indicated, record cites are to plaintiff's summary judgment appendix. (D.I. 59-64).

[2] Even if more than eight days had passed, it is clear that "[c]ontemporaneousness is not required in determining whether an event was sufficiently fresh to satisfy FRE 803(5)." U.S. v. Smith, 197 F.3d 225, 231 (6th Cir. 1999); see U.S. v. Senak, 527 F.2d 129 (7th Cir. 1975) (three year delay); U.S. v. Smith, 197 F.3d 225 (6th Cir. 1999) (15 month delay); U.S. v. Patterson, 678 F.2d 774 (9th Cir. 1982) (10 month delay).

2

addresses a matter for which a witness once had knowledge. Id. Here, the detail in plaintiff's statement speaks for itself. For example, the date, time and specifics of conversations are discussed and recorded. Similarly, an earlier handwritten draft of the grievance is in the record and it reveals that it was carefully prepared to accurately reflect the events. (Tab C).

Continuing, "[t]he touchstone for admission of evidence as an exception to the hearsay rule has been the existence of circumstances which attest to its trustworthiness." Porter, 986 F.2d at 1017. Specific to Rule 803(5), "[t]he guarantee of trustworthiness is found in the reliability inherent in a record made while events were still fresh in mind and accurately reflecting them." Fed.R.Evid. 803 Advisory Committee Notes.

Numerous additional such indicators are in the record. First, although defense counsel repeatedly attacks plaintiff's character for truthfulness and honesty, their client factually testified to the direct opposite. In the words of defendant Mears, plaintiff was "trustworthy," "honest," "a man of personal integrity" and was not a "liar." (T.Mears 55,181; A719,750). Indeed, numerous witnesses confirmed this and testified to the same. (See, e.g. Wilkinson 48; Foskey 16; Bradley 9; West 8; Shockley 18; Deloy 45-46; A719,750,904-05, 925,986, 876,887,958). Accordingly, given his admitted 'honesty,' 'trustworthiness,' 'personal integrity' and reputation for telling the truth, it would clearly be out of character for plaintiff to lie about something job related.

Similarly, defendant Mears, Captain Wilkinson and Lee Mears each have corroborated key facts contained in many of the challenged documents, including the grievance. For example, defendant Mears and Wilkinson corroborated virtually everything plaintiff said about the battle over how to address plaintiff's negative evaluation, that defendant Mears ignored Wilkinson's order about how to address the matter and contradictorily submitted it without plaintiff signature. (T.Mears Ex.11;Wilkinson 67,70,80; T.Mears 155-57; A839,930-31,933,744). Similarly,

3

plaintiff's written statements that defendant Mears was harassing him in the workplace because of the CERT resignation is corroborated by witness Lee Mears' testimony that "John got, you know, more of the brunt of it" than anyone else. (L.Mears 8; A1051). The record also otherwise supports the statements made in plaintiff's grievance and notes.

- Plaintiff did not agree and was unhappy with the evaluation's rating. (Wilkinson 55-56, Deloy 49, Adkins 36,138, L.Mears 27-28, Foskey 36; A927,905,1006, 1032,1056,991)

- Plaintiff felt defendant Mears was evaluating him personally (L.Mears 28; A1056; see Deloy 52; A906), and was "going screw him." (Wilkinson 57; A927)

- Plaintiff in fact received a "Meets Expectations" rating. (T.Mears Ex.11; A838, 840).

- There is no mention in his evaluation about a letter from the Commissioner about his perfect attendance. (T.Mears Ex.11; A840,746). In fact, this exact letter is part of the established record. (T.Mears Ex.8; A815).

- There is no mention in his evaluation of his commendation from Major Townsend for excellence in QRT Training. (T.Mears Ex.11; T.Mears 164; A840). This commendation also is in the record. (T.Mears Ex.8; P827-28; A816,585-86).

- That for the last four years he received "Exceeds Expectations." (T.Mears Ex.5-7; T.Mears Ex.11; A783-88,840).

- That plaintiff did not sign the evaluation. (T.Mears 187; T.Mears Ex.11; A752,839).

- The union shop steward even remembered plaintiff coming to him about filing this grievance. (Ackenbrack 9, 12-13, 15; A1039-41).

To the extent the defense claims prejudice from lack of an ability to cross examine plaintiff, it is clear that such concerns are without merit. See U.S. v. Kelly, 349 F.2d 720, 770 (2d Cir. 1965) (there are no confrontation clause concerns raised by the recorded recollection or other exceptions to the hearsay rule); U.S. v. Gans, 32 M.J. 412, 418 (C.M.A. 1991) (same).

**C. Rule 806(6) (Business Record).** The business record exception also applies because the grievance is clearly a "record" of relevant "acts" and events" which plaintiff created and submitted to the union for resolution mere days after he received his negative evaluation.

4

Importantly, the grievance was created in keeping with the regular practice of COAD when DOC employees filed grievances. As described by the COAD shop steward, once he gave the official grievance form to plaintiff and signed the first page, it was then plaintiff's responsibility to complete and submit the grievance, which he did. (Adkins 56; A1011; see L.Mears 6,13 Foskey 38-39; Ackenbrack 9,17, 24-25,30-31; A1051-51,992, 1039,1041,1043). Thus, as a COAD business record kept in accord with the regular practice of employee grievances, plaintiff's grievance is admissible under this exception.[3]

**D. Rule 807 (Residual Exception).** This exhibit also is admissible under the residual exception of Fed.R.Evid. 807. Justice requires that plaintiff's voice be heard in the case addressing the cause of his death. However, due to space limitations, plaintiff relies upon the discussion of this issue contained within his summary judgment reply brief. (D.I. 72 at 10-15), in his contemporaneously filed response in opposition to the defense motion to exclude purportedly inadmissible hearsay, and also notes that PX6 is the only evidence which directly contradicts defendant Mears' testimony that plaintiff never read his evaluation. (T.Mears 149,152-54,187; A742-44,752). The grievance clearly states, "I read over the evaluation." (P832; A588).

**E. Conclusion.** For the reasons set forth above, the Court should deny the defense motion in its entirety.

                Respectfully Submitted,

                **THE NEUBERGER FIRM, P.A.**

                /s/ Stephen J. Neuberger
                **THOMAS S. NEUBERGER, ESQ. (#243)**

---

[3] That COAD lost its carbon copy of the grievance is irrelevant given that the other two identical remaining carbon copies are in the record (see Ackenbrack 18; A1042) and are admissible in its stead under Fed.R.Evid. 1002.

5

                                  **STEPHEN J. NEUBERGER, ESQ. (#4440)**
                                  Two East Seventh Street, Suite 302
                                  Wilmington, Delaware 19801
                                  (302) 655-0582
                                  TSN@NeubergerLaw.com
                                  SJN@NeubergerLaw.com

Dated: August 1, 2008           Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on August 1, 2008, I filed this **Pleading** with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

>Ralph Durstein, Esquire
>Stacey Stewart, Esquire
>Department of Justice
>Carvel State Office Building
>820 North French Street
>Wilmington, DE 19801

>/s/ Stephen J. Neuberger
>**STEPHEN J. NEUBERGER, ESQ.**

# TAB A

**PX6**

Case 1:06-cv-00592-JJF    Document 101-2    Filed 08/01/2008    Page 2 of 4

# Correctional Officers Association of Delaware
# C.O.A.D.

Office (302) 734-8061
Fax (302) 734-8062

## Official Grievance Form

Date Filed: 10-04-04                           Step: 1

Name of Grievant: JOHN J. BALAS                Institution: S.C.I.

Address: _____                        Grievant Phone #: _____

_____                                 Classification of Grievant: CPL.

List violation(s) and nature of grievance(s): C.P.P.A. FOR THE YEAR 2004

Adjustment Required: FOR THE PERFORMANCE EVALUATION TO BE INCREASED FROM "MEETS" EXPECTATIONS, TO "EXCEEDS" DUE TO PERFECT ATTENDENCE.

(Use Continuation Sheet for Additional Space)

I authorize the Correctional Officers Association of Delaware as my representative to act for me in the disposition of this grievance.

Signature of Grievant: John Balas                Date: 10-04-04
Signature of Representative: [signature]         Title: COAD S/S
Date Presented to Management: _____
Disposition of Grievance: _____

COAD Official Grievance Form #12200201

# Correctional Officers Association of Delaware
# C.O.A.D.

Office (302) 734-8061
Fax (302) 734-8062

## Official Grievance Form

ON SUNDAY SEPTEMBER THE 26TH, AT APPROXIMATELY 1900 hrs, LT. MEARS CAME IN THE RECEIVING ROOM WITH AN EVALUATION FOR MYSELF. LT. MEARS SAID "I NEED YOU LOOK OVER THIS AND SIGN IT." I READ OVER THE EVALUATION AND DID NOT AGREE WITH MY PERFORMANCE THAT I WAS GIVEN. THE EVALUATION I RECEIVED WAS "MEETS EXPECTATIONS." THERE WASN'T ANYTHING ON THE EVALUATION ABOUT A LETTER FROM THE COMMISSIONER ABOUT MY PERFECT ATTENDANCE, A LETTER FROM MAJOR TOWNSEND OF APPRECIATION FOR TEACHING CAPSTUN AND Q.R.T. REFRESHER, AND MY C.E.R.T. MEMBERSHIP. I ASKED LT. MEARS IF HE WORKS MONDAY SEPTEMBER 27TH, HE HESITATED FOR A MOMENT AND SAID "NO." I TOLD LT. MEARS THAT I WOULD SIGN IT AT A LATER DATE. I DID NOT REFUSE TO SIGN IT. LT. MEARS SNATCHED THE EVALUATION OFF THE COUNTER AND WENT TO HIS OFFICE. APPROXIMATELY FIVE MINUTES LATER I WENT TO FIND LT. MEARS AND RESPECTFULLY REQUESTED A COPY OF THE EVALUATION, HE SAID, "YOU DIDN'T SIGN IT, SO YOU ARE NOT GETTING A COPY OF IT." I ASKED WHY WASN'T ANYTHING OF THE LETTERS PUT ON THE EVALUATION. LT. MEARS SAID, "IT DOES NOT WARRANT ENOUGH TO GET "EXCEEDS EXPECTATIONS" AND DID NOT NEED TO BE PUT ON THE EVALUATION." I FEEL THAT LT. MEARS HAS A PERSONAL VENDETTA AGAINST ME SINCE I HAVE RESIGNED FROM C.E.R.T. AND HE IS SHOWING DISCRIMINATION TOWARDS MYSELF. I FEEL THAT IT IS A CONFLICT OF INTEREST, HAVING LT. MEARS AS MY SUPERVISOR.

THE LAST FOUR YEARS, I HAVE RECEIVED "EXCEED EXPECTATIONS" ON MY EVALUATIONS BECAUSE OF MY PERFECT ATTENDANCE, WHY NOT THIS EVALUATION. I BELIEVE THAT LT. MEARS IS EVALUATING ME PERSONALLY NOT PROFESSIONALLY.

COAD Official Grievance Continuation Form #12200201

**TAB B**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CINDY L. BALAS a/k/a CINDY L. ADKINS, :
Executrix of the Estate of CORPORAL JOHN J. :
BALAS, :
              Plaintiff, :
     v. :     C.A.No. 06-592-JJF
STANLEY W. TAYLOR, JR., individually and :
in his official capacity as the Commissioner of :
Correction; ALAN MACHTINGER, :
individually and in his official capacity as the :
Director of Human Resources of the Department :
of Correction; MICHAEL DELOY, individually :
and in his official capacity as Deputy Warden of :
Sussex Correctional Institution; CAPTAIN :
DAVID WILKINSON, individually; :
LIEUTENANT TRUMAN MEARS, :
individually; and DEPARTMENT OF :
CORRECTION OF THE STATE OF :
DELAWARE, :
              Defendants. :

### THIRD UNSWORN DECLARATION OF CINDY ADKINS
### UNDER 28 U.S.C. § 1746

I, Cindy Adkins, hereby depose and state as follows:

1. I have personal knowledge of the facts contained in this declaration and, if called as a witness, am competent to testify as to those facts.

2. I am the widow of John J. Balas. We were married from December 1991 until his untimely death on February 19, 2005.

3. I can attest to the genuineness of John Balas' handwriting, based upon my

familiarity with his handwriting prior and during our marriage.

   4. I acquired a sufficient familiarity with the handwriting of John Balas because prior and during our marriage I witnessed him write and I also received correspondence in his handwriting.

   5. The pages marked P829-P832 produced to defendants contain notes, notations, memoirs, and/or statements in the handwriting of John Balas.

*Cindy L Adkins*
Cindy Adkins

   I declare under penalty of perjury that the foregoing is true and correct. Executed on July 29, 2008.

# TAB C

On Sunday September 26th at approximately 1900 hrs, Lt. Mears came in the receiving room with an evaluation for myself. Lt. Mears said "I need you to look over this and sign it." I read over the evaluation and did not agree with my performance that I was given. The evaluation I received was, "Meets Expectations." There wasn't anything on the evaluation about a letter from the commissioner about my perfect attendance, a letter from Major Townsend of appreciation for teaching Capstun and Q.R.T. and my C.E.R.T. membership. I ask Lt. Mears if he works Monday September 27th, he hesitated a moment and said "no." I told Lt. Mears that I would sign it at a later date. I did not refuse to sign it. Lt. Mears snatched the evaluation off the counter and went back to his office. Approximately five minunate later I went to find Lt. Mears and respectfully requested a copy of the evaluation, he said you didn't sign so you are not getting a copy of it. I asked why wasn't anything of the letters put on the evaluation. Lt. Mears said "it does not warrent enough to get "Exceeds Expectations" and did not need to be put on the evaluation. I feel that Lt. Mears has a personal ~~vendor~~ vendetta against me, because I had resigned from C.E.R.T. and is he showing discrimination towards myself. I have not done or said anything wrong about Lt. Mears or C.E.R.T. I feel it is a conflict of interest having Lt. Mears as my supervisor. The last four years I have received →

EXCEEDS EXPECTATIONS ON MY EVALUATIONS BECAUSE OF MY PERFECT ATTENDANCE WHY NOT THIS EVALUATION. I BELIEVE LT. MEARS IS EVALUATING ME ON A PERSONAL LEVEL NOT ON A PROFFESSIONAL LEVEL.