## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CINDY L. BALAS a/k/a CINDY L. ADKINS,   :
Executrix of the Estate of CORPORAL JOHN J.  :
BALAS,   :
                  :
       Plaintiff,   :
                  :
     v.   :     C.A.No. 06-592-JJF
                  :
LIEUTENANT TRUMAN MEARS,   :
                  :
       Defendant.   :

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE ALLEGED INADMISSABLE HEARSAY [PX 3, 4, 16]

**THE NEUBERGER FIRM, P.A.**
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, DE 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: August 1, 2008             Attorneys for Plaintiff

**A. Rule 401-403 (Relevance & Unfair Prejudice).** Plaintiff incorporates by reference the Rule 401-403 arguments contained in his response in opposition to the defense motion to preclude damages and claims for loss of life. Additionally, PX3-4 (Tabs A-B) are relevant to plaintiff's <u>state of mind</u> in the days leading up to his death. They tend to prove that his relationship with his wife was strong and that he killed himself for work related reasons, not because of his personal life. They are key to understanding 'why' he killed himself. PX16 (Tab C) recounts key events and interactions between plaintiff and Mears, tends to prove Mears' retaliatory intent and compellingly demonstrates his hostility towards and harassment of plaintiff.

**B. Rule 803(4) (Statements Made for Medical Diagnosis).** PX3 - plaintiff's medical journal of his symptoms and feelings - was created at the request of his treating doctor. (Balas 60; A1012).[1] "Dr. Jani asked him if he would keep journal entries on how he felt during the day." (<u>Id.</u>). This request was made at the same time his doctor "started him on medication for anxiety." (<u>Id.</u>). Accordingly it is clear that PX3 was made for "purposes of medical diagnosis or treatment," "describ[es] ... present symptoms" and was "pertinent to diagnosis or treatment," and accordingly is admissible.[2]

**C. Rule 803(3) (Then Existing Mental or Emotional Condition).** Fed.R.Evid. 803(3)

---

[1] Unless otherwise indicated, record cites are to plaintiff's summary judgment appendix. (D.I. 59-64).

[2] The U.S. Supreme Court has explained that this is a "firmly rooted" hearsay exception and recognized the "special guarantees of credibility" inherent in such statements. <u>White v. Ill.</u>, 502 U.S. 346, 356 and n.8 (1992). Additionally, defense attacks on plaintiff's credibility also are irrelevant because "[i]f an out-of-court declaration comes within a category defined as an exception, the declaration is admissible without any preliminary finding of probable credibility by the judge." <u>U.S. v. DiNome</u>, 954 F.2d 839, 846 (2d Cir. 1992) (internal punctuation omitted); <u>accord</u> <u>U.S. v. DiMaria</u>, 727 F.2d 265, 272 (2d Cir.1984). The defense also mischaracterizes the testimony of plaintiff's wife - who only saw the notes after they were written. (Balas 60; A1012).

1

allows for statements of "the declarant's then existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health" but not "to prove the fact remembered."  Thus, evidence cannot be used to prove "the truth of the matter asserted" but can be used to prove "causation," "motive" and similar matters.  Callahan v. A.E.V., Inc., 182 F.3d 237, 251-52 (3d Cir. 1999); Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1274 (3d Cir. 1995).[3]

PX3 - plaintiff's medical journal - describes his feelings of happiness and contentment with his relationship with his wife in the days immediately prior to his death.[4]  It is admissible to prove his state of mind as well as causation - the reason why he killed himself.  If his relationship with his wife was strong, then it eliminates this as a cause and motive for his death - leaving only workplace retaliation as both the cause and motivation.  PX4 - plaintiff's suicide notes - are admissible for the same reasons. They tend to prove that his state of mind regarding his family was a positive one.  There are no feelings of anger or unhappiness towards them described therein.  Instead, it again eliminates family problems as a cause or motivation of his suicide and, once again leaves workplace retaliation as the cause.  The defense is strongly defending this case on causation - claiming that plaintiff killed himself because of trouble in the home, rather than because of workplace retaliation.  These exhibits tend to prove, see Fed.R.Evid. 401, that trouble in the home was not the cause of his suicide.  Thus, this key causal evidence is essential in light of the defense position in this case.  Defendant cannot have it both ways.

---

[3]  Accordingly, to the extent they are used for this purpose, it is clear that these exhibits are not hearsay by definition.  See Fed.R.Evid. 801(c).

[4]  Courts have held that diaries and journals may meet this exception.  See Seattle- First Nat'l. Bank v. Randall, 532 F.2d 1291, 1295 (9th Cir. 1976); State v. King, 546 S.E.2d 575, 590-91 (N.C. 2001).

PX16 affirmatively addresses the same issue. It directly speaks to plaintiff's state of mind in the month leading up to his suicide and of the "pressure[]," "intimidat[ion]" and "stress[]" he was experiencing at work - which is relevant to determining the key causal issue in this case - why he killed himself. Was it because of stress at work caused by workplace retaliation or because of marital problems? This exhibit tends to prove it was because of work.

**D. Rule 803(1) (Present Sense Impression).** Fed.R.Evid. 803(1) explains that this is a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." The rule requires that (1) the declarant must have personally perceived the event described; (2) the declaration must be an explanation or description of the event rather than a narration; and (3) the declaration and the event described must be contemporaneous. U.S. v. Mitchell, 145 F.3d 572, 576 (3d Cir. 1998).

Portions of PX3 - plaintiff's medical journal - meet this exception. Plaintiff is describing how he is feeling - his own mental and emotional condition. As the date and time notations make clear, he is writing these things down as they occur and as his feelings change. Although some portions of it are admittedly a narration of events that occurred earlier in the day, other portions are clearly explaining ongoing feelings as he is experiencing them. For example, at 9:45 p.m. on February 15, 2005, plaintiff noted "tired but feel good and feel loved by all." (PX3). This does not describe a past event, but instead describes the very feelings and emotional conditions he was experiencing at the time he wrote them down. Other parts of PX3 contain similar descriptions.

In the same way, PX16 also describes events plaintiff was experiencing as they were occurring, describing his interactions with defendant Mears down to the minute, evidencing that these notes were created as the interactions occurred or immediately thereafter. As to the defense

3

claim that such recordings must be made immediately, the nature of Rule 803(1) makes clear that the time between observance of the event and the making of the statement is of a longer nature than required under the excited utterance exception of 803(2).  See Advisory Committee's Notes to 803(1)&(2).  Additionally, the Notes to 803(1) reveal that only "substantial contemporaneity" is required, a standard whose satisfaction is evidenced by the detailed time markings on PX16.[5]

**E  Rule 803(5) (Recorded Recollection).**  For the reasons comprehensively addressed in plaintiff's response in opposition to the defense motion to exclude plaintiff's COAD grievance, which is being contemporaneously filed, all three challenged exhibits also meet the standards of Fed.R.Evid. 803(5) and are plaintiff's recorded recollections of key events and issues in this case.  Accordingly, each may be independently read to the jury as substantive evidence.

**F.  Rule 807 (Residual Exception).**  PX16 also satisfies the residual exception of Fed.R.Evid. 807 because it contains the necessary "guarantees of trustworthiness."  First, plaintiff's reputation for honesty, integrity and the plethora of corroborating record evidence is detailed in plaintiff's response to the defense motion to exclude his COAD grievance.

The materiality requirement also is met.  Plaintiff's handwritten notes discuss all of the adverse action at issue, including the negative performance evaluation, the denial of a meeting with his supervisors and union representative, Mears' submission of the evaluation without plaintiff's signature, and denial of his timecard, all of which are material to the case.  In the same way, these documents contain contemporaneously created evidence of defendant Mears' hostility and antagonism towards plaintiff.

---

[5]  Although it is clearly a case by case determination as to what is considered substantially contemporaneous, in U.S. v. Mitchell, 145 F.3d at 577, the Third Circuit cited with favor the case of U.S. v. Blakely, 607 F.2d 779 (7th Cir. 1979) and noted that the court had held "admissible a statement made up to 23 minutes after it was observed as a present sense impression."

4

The probative requirement also is met.  Because defendant drove plaintiff to kill himself, plaintiff is unable to offer his own testimony regarding the events surrounding this case.  His handwritten notes are the closest item in existence to plaintiff's own testimony about the events that resulted in his death.

Likewise, the interests of justice are served by admitting these notes to help enable the jury to determine the truth of why he killed himself - which is the purpose of the rules.  See Fed.R.Evid. 102.  Relatedly, fairness and justice require that plaintiff, while deceased, have a voice in his own lawsuit about the cause of his death.

The equities also tilt in favor of admission.  If the jury agrees with the abundant evidence in the record, that finding will conclusively establish that plaintiff is dead because the defendant drove him to kill himself - which means the defendant's actions are the equivalent of evidence destruction.  Mears destroyed the best source of testimonial evidence that exists - plaintiff.  The defense cannot now cry foul that plaintiff fortuitously created contemporaneous written records describing some of the retaliatory conduct that soon drove him to take his own life.

**G.  Conclusion.**  The defense motion should be denied in its entirety.

Respectfully Submitted,

**THE NEUBERGER FIRM, P.A.**

/s/ Stephen J. Neuberger
**THOMAS S. NEUBERGER, ESQ. (#243)**
**STEPHEN J. NEUBERGER, ESQ. (#4440)**
Two East Seventh Street, Suite 302
Wilmington, Delaware 19801
(302) 655-0582
TSN@NeubergerLaw.com
SJN@NeubergerLaw.com

Dated: August 1, 2008                Attorneys for Plaintiff

<u>**CERTIFICATE OF SERVICE**</u>

I, Stephen J. Neuberger, being a member of the bar of this Court do hereby certify that on

August 1, 2008, I filed this **Pleading** with the Clerk of the Court using CM/ECF which will send

notification of such filing to the following:

> Ralph Durstein, Esquire
> Stacey Stewart, Esquire
> Department of Justice
> Carvel State Office Building
> 820 North French Street
> Wilmington, DE 19801

> /s/ Stephen J. Neuberger
> **STEPHEN J. NEUBERGER, ESQ.**

# TAB A

**PX3**

- 2-15-05 - 2145 -
TIRED BUT FEEL GOOD
AND FEEL LOVED BY
ALL.

-2-16-05 - 1015
FEEL TIRED, FEEL DOWN
A LITTLE BUT FOR MOST PART
GOOD FEELINGS. TALKED TO LEE
FEEL BETTER.
-1105-
GETTING READY TO LEAVE TO
CABELAS. A LITTLE NERVOUS
FEELING FAIR..
1300
ATE LUNCH STILL NERVOUS ABOUT
TRIP. / STOPPED TO GET GAS
CINDY ACTS LIKE SHE ENJOYS
ME & MY COMPANY. FEEL GOOD

I GOT PIZZA IN DOVER mixed
FEEL A LITTLE DOWN BUT
THINGS ARE GOOD FOR ME
WITH CINDY BY MY SIDE.

- 2100 - 2-16-05
LEFT CABELAS - FOUND GOOD DEALS
ON WADERS. EATING DINNER AT
A PLACE CALLED COUSINS. NICE
HAPPY WITH CINDY. TALKING ENJOYING
HER COMPANY. FEEL NO STRESS
SO FAR NO WORRIES. FEEL
SECURE !

- 2-16-05
1030  GOOD DINNER / BACK TO
HOTEL - FEEL RELAXED CALM.
NO PRESSURES. NICE TO BE
WITH CINDY.

- 2-17-05 - 7AM Amy WOKE UP. TOOK
SHOWER. WELL RESTED.
LOOKING FORWARD TO SPEND
THE DAY WITH CINDY.

POSITIVES

CINDY.
FEEL GOOD WITH HER.
NO PRESSURE. / NO STRESS,
DOING WHAT WE BOTH WANT TO DO
FRIENDS CHECKING ON ME.

945
FEELING DOWN / TIRED.
DON'T KNOW WHY. SAD - THINKING
ABOUT EVERYTHING. GOING TO TRY
TO CLEAR MIND AND ENJOY
TIME WITH CINDY.

2-18-05 - 1300
FEELING DOWN. SO MUCH
TO DO. GOING TO WORK ON ONE
THING AT A TIME - FEEL
A LITTLE UNSECURE / LONELY
DON'T KNOW WHY. THINKING OFF
INTO SPACE. I FEEL FAIR.

**TAB B**

**PX4**

CINDY~ SORRY I WASN'T
WHAT YOU WANTED. YOU
DESERVE A LOT OF CREDIT FOR
PUTTING UP WITH me. SORRY FOR ALL
THE MISERY I BROUGHT
YOU AND YOUR FAMILY.

REMEMBER I DID THIS BECAUSE I
LOVE YOU. YOU ~~DON'T~~ DON'T NEED
ME TO WEIGH YOU DOWN. LIVE
LIFE TO THE FULLEST. I JUST DIDN'T
WANT TO LIVE ANYMORE.

JONATHAN — YOU BRING ME SO
MUCH JOY WATCHING YOU GROW
UP. YOUR SMART AS A WHIP
YOU HAVE A GOOD HEAD ON YOUR
SHOULDERS — STAY STRONG AND
TAKE CARE OF THE HOME STEAD
YOU ARE EVERYTHING I WANTED
IN A SON.

TIM MCGRAW. —
PLEASE REMEMBER ME

IT'S YOUR LOVE.


LAUREN — YOU BRING ME SO
    MUCH LOVE. I CRY WHEN
I SAY YOUR NAME OR THINK OF
YOU. I FELT YOUR LOVE SO
MUCH. IT'S LIKE GOD TELLS
ME YOU LOVED ME NO MATTER
WHAT. DON'T EVER STOP BEING
YOU. YOU ARE SO WONDERFUL

MOM/DAD - I TRIED TO MAKE
IT, BUT I COULDN'T. I AM.
 SORRY FOR BEING SO WEAK.
DON'T DWELL ON THIS, LOVE
LAUREN & JONATHAN LIKE NO
OTHER. SORRY I DIDN'T TURN
OUT LIKE YOU WANTED. THE
KIDS NEED YOU SO FOCUS ON THEM

THIS IS NO ONE'S FAULT, DON'T
BLAME CINDY OR ANYBODY, THIS
WAS MY CHOICE.

TO LEE ! I LEAVE YOU

THE SONG

MY OLD FRIEND

TIM MCGRAW.

You WERE ALWAYS THERE FOR
ME.

~ REMEMBER EVERYBODY YOU SHOULD
LIVE LIKE YOU WERE DYING ~

PLAY — "THE DANCE" PLEASE
"GARTHBROOKS"

LISTEN TO TIM MCGRAW
KILL MYSELF.
"EVERYBODY"
~ I DID THIS BECAUSE I
LOVE YOU! —

**TAB C**

**PX16**

1-9-05

AT APPROXIMATELY 1638, LT. TRUMAN MEARS CAME

IN TO THE RECEIVING ROOM AREA. LT. MEARS. SAID. "JOHN, I NEED TO

TURN MY EVALUATIONS IN AND I WANT YOU AND I TO FINISH IT UP,

YOU'RE HOLDING IT UP. "ARE YOU STANDING ON WHAT YOU BELIEF OR ARE

YOU WILLING TO SIGN OFF ON MEET EXPECTATIONS" I SAID "WHAT

DO YOU MEAN?" HE SAID, 'WILL YOU SIGN OFF ON MEETS EXPECTATION

ON NOT" I SAID "WHAT ABOUT CAPT. WILKINSON BEING PRESENT

FOR THIS." LT. MEARS SAID THAT CAPT. WILKINSON DOESN'T NEED TO BE

HERE FOR YOU TO SIGN IT. IN FACT I REQUEST CAPT. WILKINSON TO BE THERE

BUT HE DOESN'T HAVE TO BE." I TOLD LT. MEARS, "I ALSO REQUESTED

THAT CAPT. WILKINSON BE THERE WHEN THE EVALUATION WAS TO BE

REVIEWED BY MYSELF AND A UNION REP." LT. MEARS SAID "A UNION

REP TO BE PRESENT FOR YOUR EVALUATION" I SAID "YES" LT MEARS ACTED

DISGUSTED AND WALKED AWAY. LT. MEARS CAME ACROSS AS TO BE BULLY-ING ME

PRESSURING ME TO DO THIS, WITHOUT HAVING CAPT. WILKINSON AND A UNION

REP. PRESENT. I FEEL THAT I NEED OTHER PERSONS PRESENT IN CASE

ANY THING IS MIS INTERPERTED ON BOTH PARTIES. I FEEL

PRESSURED, INTIMATED, AND STRESSED WITH THIS INDIVIDUALL (LT. MEARS)

BECAUSE, I FEEL HE IS USING HIS AUTHORITY TO MAKE ME FEEL THIS

WAY BECAUSE I RESIGNED FROM E.E.R.T AND THIS IS HIS WAY TO

BE VANDICTIVE TOWARDS ME. I STILL DON'T HAVE A COPY OF

MY 2004'S TIME CARD.

AFTER MY CONVERSATION WITH LT. MEARS I CALLED

AND NOTIFIED CAPT. WILKINSON & CAPT. WILKINSON ADVISED ME THAT

HE WANTED TO BE THERE FOR THE REVIEW OF THE EVALUATION

AND IT WOULD BE CAPT. WILKINSON — LT. MEARS & CPL. DALES AND

A UNION REP.

1-9-05 AT 17:11 I SENT LT. MEARS AN E-MAIL
REQUESTING A COPY OF MY 2004 TIME CARD.

1-9-05 — AT 20:35 LT. MEARS PRESENTS ME WITH A
COPY OF MY TIME CARD FOR YEAR 2004.

2-7-05    0915

ON THE    ABOVE DATE AND APPROX. TIME, I CALLED    THE WARDEN'S

SECRETARY AND ASKED IF MY EVALUATION HAS BEEN TURNED IN.

SHE SAID YES. I ASKED IF IT WAS SENT UP STATE AND

SHE SAID YES. I THAN ASKED WHAT DID MY SUPERVISOR PUT

FOR MY SIGNITURE. SHE SAID REFUSED TO SIGN. I NEVER

SAW MY EVALUATION. I CALLED CAPT. WILKINSON TO NOTIFY HE OF

THIS. I LEFT A MESSAGE FOR HIM TO CALL ME. I ALSO CALLED DEPUTY

WARDEN DELOY AND TOLD HIM WHAT HAPPEN AND HE ADVISED ME

TALK TO CAPT. WILKINSON. CAPT. WILKINSON CALLED ME

BACK AROUND 11:30/12:00. HE INFORMED ME THIS WOULD BE

TAKEN CARE OF.